No. 02-105

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 194

IN RE THE MARRIAGE OF

DAVID LEROY ROLF,

Petitioner and Appellant,

and

CHRISTINE MARIE ROLF,

Respondent and Respondent.

APPEAL FROM:     District Court of the Fourth Judicial District,
                 In and For the County of Missoula, Cause No. DR 98-86082,
                 Honorable Ed McLean, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Laurence J. Ginnings, Attorney at Law, Missoula, Montana

        For Respondent:

                Terry Wolfe, Sol & Wolfe Law Firm, PLLP, Missoula, Montana

                                        Submitted on Briefs:  May 30, 2002

                                              Decided:  August 4, 2003

Filed:

        _____
                            Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Appellant David Leroy Rolf (David) filed a petition for dissolution of marriage in the Fourth Judicial District Court, Missoula County. He appealed the determination of the district court awarding marital assets to his former spouse, Christine Marie Rolf (Christine). This Court remanded for further determinations regarding the value of the estate and its distribution. *In Re Marriage of Rolf*, 2000 MT 361, 303 Mont. 349, 16 P.3d 345 (*Rolf I*). On remand, the district court awarded Christine a smaller portion of the marital estate and maintenance. David now challenges the order and judgment of the district court. We affirm in part and remand in part.

## ISSUES

¶2 We restate the issues on appeal as follows:

1. Did the district court exceed its jurisdiction when it distributed marital assets and awarded maintenance following remand?

2. Did the district court err in finding that the marital estate had appreciated and in distributing the appreciated value?

3. Was the district court's award of maintenance supported by the evidence?

4. Did the district court deny David due process of law?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 This is the second appeal to come before this Court in this matter. Most of the relevant facts were set out in our previous opinion. See *Rolf I*.

¶4 To summarize, David and Christine had a tumultuous five-year relationship. They met in mid-1993 in Arizona and lived together there from February 1994 to June 1995. In

2

early 1995, David bought residential and ranch property in the Bitterroot Valley in Montana. He asked Christine to move there with him to share in the "Montana Dream."

¶5 In June 1995, Christine took a leave of absence from her job with the Scottsdale Memorial Hospital in Arizona, sold her horse and car, and moved to Montana to share the home David had purchased. However, due to turmoil between the parties, Christine left the relationship in August 1996 and regained her former position at Scottsdale Memorial Hospital.

¶6 David followed Christine to Arizona and convinced her to marry him and return to Montana. David promised to put $10,000 in an account for Christine to ensure that she would have funds to live on temporarily if the marriage fell apart. The couple was married on November 29, 1996 in Arizona. Upon leaving for Montana with David the second time, Christine terminated her employment with the hospital in Arizona, rather than take a leave of absence as she did the first time.

¶7 Prior to the marriage, David had a net worth of nearly $1,000,000. Among David's premarital assets was the Bitterroot Valley property. Christine did not contribute to the purchase price of this property and she did not bring any substantial assets to the marriage.

¶8 David and Christine experienced marital difficulties soon after their marriage. They separated in January 1998. On August 11, 1998, the district court, the Honorable John W. Larson presiding, awarded Christine temporary maintenance. Trial on the dissolution was held on February 4, 1999. On April 2, 1999, the district court entered its Findings of Fact, Conclusions of Law, and Decree of Dissolution.

3

¶9     The district court found that the marital estate had increased $78,778 in value. Christine was principally awarded $80,000 of the value of the Bitterroot Valley home, a Ford Bronco, and a horse. The court also ordered David to pay $3,000 in credit card debt and Christine's $1,200 outstanding debt to her therapist, plus $4,000 for future counseling sessions. The court did not enter a specific award of maintenance, finding an "award of maintenance to be inappropriate in this matter in view of the allocation of property." David appealed.

¶10    David's primary contentions in his first appeal were that his marriage to Christine was of such brief duration that Christine should not have been awarded property, and that the Bitterroot Valley home was a pre-marital asset that should not have been included in the estate. He also maintained that the estate did not increase in value during the marriage.

¶11    On December 27, 2000, we issued our decision in *Rolf I*. We affirmed the district court's decision to consider the parties' premarital cohabitation in apportioning the marital estate. However, we found that:

> [the] district court abused its discretion when it included the Bitterroot Valley home in the marital estate and awarded a portion of the value of the home to Christine without a finding that the home appreciated in value during the term of the marriage and that Christine's contributions 'facilitated the maintenance of this property' or that the property division 'served as an alternative to maintenance arrangements.' Section 40-4-202, MCA.

We remanded the case to the district court for a determination of the appreciated value of the marital assets and an equitable distribution of the appreciated value of those assets.

¶12 Upon remand, Judge Larson recused himself and the Honorable Ed McLean assumed jurisdiction. A remand hearing was then held. The district court issued its Findings of Fact, Conclusions of Law and Order on December 26, 2001.

¶13 The court adopted most of the findings from the first decision of the district court, including the finding that the marital estate had increased $78,778 in value during the parties' cohabitation and marriage. The court employed the following language in its opinion:

> Rather than award Christine a disproportionate share of the appreciated marital estate in lieu of maintenance or support, this Court finds that Christine should be awarded thirty-nine thousand ($39,000) dollars of the increased marital estate, and maintenance and support in the amount of two thousand ($2000) dollars per month . . . for a period of twenty-four months. This conclusion is reached in accordance with the Supreme Court's Opinion commenting on the original decree not specifically mentioning marital asset distribution being done in lieu of maintenance or support. This award is made to restore Christine to the condition she was in prior to the marriage.

As explained below, this finding has plunged the parties and this Court into a second round of confusion in this case. David appeals.

## STANDARD OF REVIEW

¶14 We review a district court's division of marital property to determine whether the findings of fact on which the court relied are clearly erroneous. *In re Marriage of Engen*, 1998 MT 153, ¶ 26, 289 Mont. 299, ¶ 26, 961 P.2d 738, ¶ 26. If the findings are not clearly erroneous, we will affirm the distribution of property unless the court abused its discretion. *Engen*, ¶ 26. To conclude that a district court abused its discretion in a marital dissolution proceeding, we must determine that the district court acted arbitrarily without

employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *Engen*, ¶ 26.

¶15 We review a district court's interpretation of law de novo, to determine whether it is correct. *Hayes v. Hayes* (1994), 264 Mont. 350, 352, 871 P.2d 913, 914.

### DISCUSSION

¶16 **Did the district court exceed its jurisdiction when it distributed marital assets and awarded maintenance following remand?**

¶17 David's central argument on appeal is that the district court exceeded its jurisdiction by hearing issues outside the scope of our remand. Our opinion stated, in relevant part, that "we remand to the District Court for a determination, consistent with this opinion, of the appreciated value of the marital assets and an equitable distribution of the appreciated value of those assets." David contends, therefore, that the only question properly before the court was a determination of the appreciated value of the marital assets, if any. He asserts that there was no basis for the maintenance award.

¶18 Christine argues, on the other hand, that Judge Larson did not award her maintenance because the monetary and property award she was granted in the first district court order -- worth nearly $100,000 -- was sufficient to meet her needs, thus obviating the need for maintenance. When that distribution of property was reversed by this Court, she maintains, the district court was obligated to reconsider both the distribution of assets between David and Christine *and* the provision of maintenance to Christine.

¶19 To properly address this appeal, we must briefly revisit Judge Larson's opinion and our decision in *Rolf I*. The first district court decision was not a model of clarity, and as a

6

consequence, our opinion in *Rolf I* failed to shed much light on it. In Judge Larson's April 2, 1999 Findings of Fact, he stated: "The Court finds . . . the award of maintenance to be inappropriate in this matter in view of the allocation of property set forth below." Unfortunately, he also said, in awarding her $80,000 in value of the marital home, that such award was based on the "assets which she maintained and of which she facilitated the accumulation." These signals were conflicting: was the award of $80,000 maintenance, or was it an award of marital property based upon her contribution to the increased value of the home?

¶20    In *Rolf I*, our conclusion that Judge Larson had abused his discretion in awarding Christine a portion of the value of the Bitterroot Valley home rested on the district court's failure to find that "the home had appreciated in value during the term of the marriage and that Christine's contributions 'facilitated the maintenance of this property' *or that the property division 'served as an alternative to maintenance arrangements.'* Section 40-4-202, MCA." (Emphasis added.) We remanded for an answer to this question. Unfortunately, though, the failure of the district court to make its intentions clear prior to remand is a problem that has recurred in the proceedings leading to this appeal.

¶21    Section 40-4-202(1), MCA, states, in pertinent part, that in a proceeding for the division of property following a decree of dissolution of marriage, the court shall:

> equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both. In making apportionment, the court shall consider the duration of the marriage and prior marriage of either party; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the

7

parties; custodial provisions; *whether the apportionment is in lieu of or in addition to maintenance*; and the opportunity of each for future acquisition of capital assets and income.

(Emphasis added.)  The statute goes on to address the division of property acquired before marriage:

> In dividing property acquired prior to marriage . . . the could shall consider those contributions of the other spouse to the marriage, including:
> (a) the nonmonetary contribution of a homemaker;
> (b) the extent to which such contributions of facilitated mainte-
> nance of this property; and
> (c) *whether or not the property division serves as an alternative
> to maintenance arrangements.*

 (Emphasis added.)

¶22    We take this opportunity to clarify the law with regard to the division of property acquired before marriage.  We have previously stated that "regardless of who holds title, pre-acquired or gifted property need not be included in the marital estate unless the non-acquiring spouse contributed to its preservation or appreciation.  In that event, we have held that the non-acquiring spouse is entitled to an equitable share of the appreciated or preserved value which is attributable to his or her efforts."  *Engen*, ¶ 29.  However, as § 40-4-202(1)(c), MCA, makes clear, pre-acquired property can be distributed to a non-acquiring spouse *in lieu of maintenance*, regardless of whether she contributed to its increase in value, if "the property division serves as an alternative to maintenance arrangements."  Such an intent–to award the property in lieu of maintenance--must be clearly stated by the district court.

8

¶23 Thus, if the district court in the original proceeding had intended to award Christine $80,000 from the value of the marital home *in lieu of maintenance*, and had made such an intent clear, together with making the necessary findings supporting an award of maintenance, then the $80,000 award could conceivably have been sustained as maintenance, even without a showing that the home had increased in value and that Christine's efforts facilitated the maintenance of the property.

¶24 Against this backdrop, we now reach the question of whether the district court exceeded its jurisdiction in distributing marital assets and awarding maintenance following remand.

¶25 It is well established that §§ 40-4-202 and -203, MCA, covering distribution of property and maintenance, respectively, "must be considered together." *In re Marriage of Hilt* (1984), 209 Mont. 140, 146, 679 P.2d 783, 786. As indicated in the Commissioners' Note to these statutes, the "dual intention [of the maintenance and property sections] is to encourage the court to provide for the financial needs of the spouses by property disposition rather than by an award of maintenance." *Hilt*, 209 Mont. at 145, 679 P.2d at 786. Property and maintenance awards are to be considered in tandem, with a clear preference for awarding property first. *Hilt*, 209 Mont. at 145, 679 P.2d at 786.

¶26 The maintenance statute specifically contemplates consideration of the property distribution: in awarding maintenance, the court is ordered to consider "all relevant facts including the financial resources of the party seeking maintenance, *including marital property apportioned to him . . .*" § 40-4-203(2)(a), MCA. (Emphasis added.) Thus, it

9

follows that when maintenance is an issue and a property award is disturbed on appeal, the district court may be compelled to reconsider the question of maintenance on remand, taking into account the changes in the allocation of property. *In re Marriage of Davies* (1994), 266 Mont. 466, 478, 880 P.2d 1368, 1376.

¶27 Because, as we have said, Judge Larson found that a maintenance award was inappropriate "*in view of* the allocation of property," it is apparent that a need for maintenance factored into his decision. Thus, once we reversed the allocation of property, it was appropriate that the district court, on remand, revisit both the property allocation and the issue of maintenance. Therefore, we conclude the district court did not exceed its jurisdiction upon remand.

¶28 **Did the district court err in finding that the marital estate had appreciated and in distributing the appreciated value?**

¶29 In *Rolf I* we held that the district court abused its discretion when it included the Bitterroot Valley home in the marital estate and awarded a portion of the home's value to Christine without a finding that the home had appreciated in value. We also found fault with the court's conclusion that the marital assets had increased in value.

¶30 At the first trial, the district court relied on several documents offered by Christine to arrive at its finding that the marital estate had gained $78,778 in assets, consisting mainly of the value of horses, savings, and retirement. However, as we pointed out in *Rolf I*, "those same documents show that while the value of horses, savings, and retirement had increased by that amount, other assets markedly decreased, thus supporting David's contention that the increase in the value of the horses, savings, and retirement were due in part to a shifting of

10

assets." We concluded that the evidence Christine presented was insufficient to demonstrate an increase in the value of the marital estate during the marriage. Accordingly, we remanded the case to the district court for a finding of the appreciated value of the marital assets.

¶31  Having reviewed the district court's award following remand (see ¶ 13), we are unable to determine whether the award of $39,000 was meant by the court to supplement the $2,000 per month award of maintenance, or whether it was meant to be a separate award of property. The language of the court's award can be read to support either conclusion. If we assume, as David does, that the court meant to award the $39,000 to Christine for the increase in value to the marital estate, Christine bore the burden of presenting evidence to support her contention that the marital assets increased in value. However, she presented no new evidence on this point. Despite our conclusion in *Rolf I* that there was insufficient evidence to support the first district court's finding of a $78,778 increase in the value of marital assets, the district court adopted the same finding on remand. Because no additional evidence was offered to support this finding at the remand hearing, we must conclude that the determination that the marital assets gained nearly $79,000 in value was unsupported and was therefore erroneous.

¶32  **Was the district court's award of maintenance supported by the evidence?**

¶33  We next turn to the district court's discrete award of $2,000 per month maintenance for a period of 24 months. David contends the district court failed to make findings establishing that Christine was entitled to maintenance under Montana law. He further

11

claims that the district court misstated the law in its Conclusions of Law awarding Christine maintenance.

¶34     Section 40-4-203, MCA governs awards of maintenance. The statute provides:

> (1)  In a proceeding for dissolution of marriage . . . the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:
>> (a) lacks sufficient property to provide for his reasonable needs; and
>> (b) is unable to support himself through appropriate employment . . .
>
> (2)  The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, and after considering all relevant facts including:
>> (a)  the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently . . .
>> (b)   the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
>> (c)  the standard of living established during the marriage;
>> (d)  the duration of the marriage
>> (e)  the age and physical and emotional condition of the spouse seeking maintenance; and
>> (f)  the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

¶35     Based on our review of the record, we conclude there was substantial evidence to support a maintenance award. While David claims the court "failed to make any findings of fact concerning maintenance," the record contradicts this assertion. The court determined that "as a result of the Supreme Court's determination to disallow the award by Judge Larson to Christine of the automobile which she regularly drove and a share of the marital residence value, she is without sufficient property to provide for her reasonable needs and is unable

12

to support herself through reasonable employment, especially as a result of the expenses incurred through the litigation process." This finding satisfies the statutory requirements for awarding maintenance, articulated in § 40-4-203(1)(a) and (b), MCA, and is amply supported by evidence in the record detailing Christine's limited income and expenses.

¶36 Judge McLean specifically adopted most of Judge Larson's factual findings, many of which speak directly to the issue of maintenance. Among other things, the district court found that Christine now earns only $17,000 year in secretarial work; she was nearly destitute after following David to Montana the first time, and was forced to sell personal property to David--including a toaster oven and an extension ladder--to raise funds to return to Arizona; and, at David's urging, Christine left her job in Arizona, where she earned $12.40 an hour and had nine years seniority and health and retirement benefits, to marry David and follow him back to Montana. Moreover, after David filed for divorce and Christine moved from the marital home, she was without income or prospects for employment and did not receive any significant assistance from David. She was compelled by her circumstances to move into a basement office in the home of her daughter and son-in-law, a home also shared by Christine's four grandchildren. The court further found that Christine suffered emotionally as a result of the relationship and initiated counseling to deal with the her problems. Christine's therapist testified that Christine would require six to twelve months additional therapy to allow her to overcome the physical and emotional problems stemming from her relationship. (Section 40-4-203(2)(e) provides that the emotional condition of the spouse seeking maintenance is a factor to be considered by the district court in awarding

13

maintenance.) Finally, the court found that if Christine returned to Arizona, she would not be able to regain her former employment at Scottsdale Memorial Hospital, and if she stays in Montana, she will earn much less, evidenced by her current pay rate of $8.50 per hour.

¶37    In addition to adopting these findings, Judge McLean also found that as of the December 18, 2001 hearing, David was earning approximately $100,000 a year, and that the marital estate was valued at approximately $1,000,000.

¶38    David strives mightily--though unpersuasively--to argue that maintenance is inappropriate in a marriage of short duration.  He cites *In re Marriage of Bradshaw* (1995), 270 Mont. 222, 237-238, 891 P.2d 506, 515.  *Bradshaw*, however, was an exceptional case, in which the assets at issue had been paid for by the husband prior to the marriage, and the husband suffered a severe brain injury that left him partially paralyzed and caused learning disabilities.  The wife, on the other hand, was able-bodied and had much brighter work prospects.  Moreover, the court noted the short duration of the marriage--five months--as *one* factor counseling against a property or maintenance award for the wife.  Actually, in the bulk of cases in which maintenance awards were contested on the grounds that the marriage was of short duration, we have upheld the awards.  See, e.g., *In re Marriage of Forney* (1986), 221 Mont. 63, 716 P.2d 635; *In re Marriage of Eschenbacher & Crepeau* (1992), 253 Mont. 139, 831 P.2d 1353; *In re Marriage of Cannon* (1990), 242 Mont. 230, 790 P.2d 479.

¶39    Finally, David argues that we should reverse the award of maintenance to Christine because the district court based the award on an incorrect statement of the law.  David challenges the following two conclusions of law in the district court order:

14

5.  Maintenance would be appropriate under the circumstances where limited marital property has been apportioned to [Christine], her ability to meet her needs independently is limited, the standard of living established during the marriage was significantly superior to that in which she has found herself since the dissolution, and David has substantial resources with which to meet his needs while meeting those of Christine and his ability *to place her in a similar position that she was in prior to the marriage.*

6.  Rather than award Christine a disproportionate share of the appreciated marital estate in lieu of maintenance or support, this Court finds that Christine should be award thirty-nine thousand ($39,000) dollars of the increased marital estate, and maintenance and support in the amount of two thousand ($2000) dollars per month . . . for a period of twenty-four months.  This conclusion is reached in accordance with the Supreme Court's Opinion commenting on the original decree not specifically mentioning marital asset distribution being done in lieu of maintenance or support. *This award is made to restore Christine to the condition she was in prior to the marriage.*

(Emphasis added.)

¶40     David is correct that the appropriate aim of a maintenance award is not to place the recipient of the award in the position she occupied prior to the marriage; rather, the relevant question in determining whether maintenance is appropriate "is whether the spouse seeking maintenance lacks sufficient property and is unable to support herself through appropriate employment *according to the standard of living established during the marriage.*"  *In re Marriage of Madson* (1978), 180 Mont. 220, 224-25, 590 P.2d 110, 112.  (Emphasis added.) There seems little doubt that, given David's income and net worth, Christine's limited hourly wages would not allow her to support herself according to the standard established during her marriage to David, who has accumulated an estate worth $1,000,000.

¶41     While the district court did misstate the aim of the maintenance award in its Conclusions of Law, this is harmless error.  As we have said before, "we will affirm a

15

district court's decision when it reaches the correct result for the wrong reasons." *State v. Wagner*, 2003 MT 120, ¶ 32, 315 Mont. 498, ¶ 32, 68 P.3d 840, ¶ 32. That is the case here.

¶42 The district court's decision to award maintenance was supported by appropriate findings of fact which were, in turn, amply supported by the record. Accordingly, we affirm the award of maintenance to Christine.

¶43 **Did the district court deny David due process of law?**

¶44 Finally, David claims that he was denied due process of law in the dissolution proceedings on remand. He maintains he was unfairly denied sufficient time to present his case. Judge McLean commented that he had to be at a meeting that could not be rescheduled, and gave David "about twenty minutes" to present his case. David did not, however, object at the remand hearing and thus failed to preserve his right to appeal on these grounds. Further, he cites no authority to support his argument that time limits constitute a denial of due process. As Christine points out, she, too, was constrained by time limits.

## CONCLUSION

¶45 Based upon the foregoing, we affirm the order of maintenance in the sum of $2,000 per month for 24 months, and we remand for clarification of the balance of the court's award in the sum of $39,000. If this was intended as a supplement to the 24-month maintenance award, such should be clearly stated and supported by the record. If it was intended as a distribution of the increased value of the marital estate, then, for the reasons set forth in ¶ 31, it shall be vacated.

¶46 In all other respects, the order of the district court is affirmed.

/S/ PATRICIA COTTER


We concur:


/S/ KARLA M. GRAY
/S/ JIM RICE
/S/ JAMES C. NELSON
/S/ JIM REGNIER