No. 02-649

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 40

IN RE THE MARRIAGE OF

TERESA LEE HERRERA,

Petitioner, Respondent and Cross-Appellant,

and

RICHARD ALEX HERRERA,

Respondent and Appellant.

APPEAL FROM:     District Court of the First Judicial District,
                 In and For the County of Lewis and Clark, Cause No. BDR 2000-241,
                 Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            John L. Hollow, Attorney at Law, Helena, Montana

        For Respondent:

            Ronald F. Waterman, Gough, Shanahan, Johnson and
            Waterman, Helena, Montana

                                Submitted on Briefs:  March 13, 2003

                                          Decided:  February 24, 2004

Filed:

        _____
                          Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Teresa Herrera (Teresa) petitioned for dissolution of her marriage to Richard Herrera (Richard) in the First Judicial District Court, Lewis and Clark County. Following a non-jury trial, the District Court entered Findings of Fact, Conclusions of Law, and Decree of Dissolution, dissolving the parties' marriage, distributing the couple's property, setting child support obligations, and approving the shared parenting plan. Richard appeals, and Teresa cross-appeals, from the District Court's property distribution. Teresa additionally cross-appeals from the court's failure to award attorney fees. We affirm in part, reverse in part, and remand.

¶2 The parties raise the following issues on appeal:

¶3 1. Did the District Court err in awarding Teresa one-half of the equity in the family home when a substantial portion of the funds to construct the home came from Richard's inherited or gifted monies?

¶4 2. Did the District Court err by including the entire value of Richard's Merrill Lynch retirement account and a 1992 Ford pickup in the marital estate when the equity in these properties represented gifted or inherited funds?

¶5 3. Did the District Court err in excluding Richard's fractional interest in his family's properties in Broadwater County and a cabin near Canyon Ferry Lake from the marital estate?

¶6 4. Did the District Court err in not awarding Teresa attorney fees?

**FACTUAL AND PROCEDURAL BACKGROUND**

2

¶7     Richard and Teresa were married August 8, 1987, in Helena, Montana. About a year and a half prior to the marriage, Richard had inherited in excess of $50,000 in gold and silver from his father. On the day before the parties' wedding, Richard purchased a condominium in Seattle, Washington, using money that had been gifted to him from his father as a down payment. After the wedding, Richard and Teresa moved to Seattle, where Richard worked as a mechanical engineer for Boeing and Teresa sought employment. Teresa eventually gained work as a receptionist at a nearby shopping mall and then shortly thereafter as a receptionist for Boeing. The parties thereafter sold the condominium and, using the sale proceeds, purchased another home in the Seattle area.

¶8     In 1993, shortly after the birth of their second child, Richard and Teresa returned to Helena. For the next two years, they lived with Richard's mother while they constructed a home on a lot that Richard, along with his mother and four siblings, had inherited from Richard's father in 1986. In October 1994, Richard's family deeded the property to Richard and Teresa, based upon an oral promise to pay $15,000 for the lot, which was subsequently never paid. By the time of trial, the lot was valued at $51,000.

¶9     In financing the construction of the Helena residence, Richard and Teresa used the money they received from the sale of their Seattle residence, approximately $25,000, as well as $30,000 from a Workers' Compensation settlement which Richard received as a result of work-related injuries in the early part of 1996. Richard also contributed a portion of his gold

3

inheritance, between $30,000 and $40,000, as well as $20,000 which had been gifted to him by his godmother.

¶10    For her part, Teresa contributed approximately $10,000 to the construction of the Helena residence–funds from her retirement account at Boeing–and acted as the primary caretaker for the parties' minor children.  Teresa also shared in a mortgage on the family residence, which was originally $65,000.

¶11    In 1995, after moving into the Helena residence, Richard and Teresa had their third child.  Shortly thereafter, Teresa obtained employment at a local physical fitness center, working part-time in the center's daycare facility.  As she did so, she continued to care for the parties' three minor children, who accompanied Teresa at work.  Teresa maintained her employment at the fitness center for the duration of the parties' marriage, and, at the time of trial, was working full-time as the center's bookkeeper.

¶12    Richard also maintained employment throughout the marriage.  After returning to Helena, Richard worked briefly for State Farm Insurance Company before obtaining a sales position at a local car dealership, where he worked for approximately one year.  Richard thereafter went to work for Allstate Insurance Company as a claims representative, where he continued to work up through the time of trial.

¶13    In conjunction with his past employment, Richard held a Merrill Lynch retirement account, which was valued at approximately $23,255 at the time of trial.  Although the account represented retirement contributions Richard accrued during his employment with

4

Boeing, the account was funded, in principle part, by a $14,000 gift from Richard's godmother.

¶14 Richard also owned a fractional interest in several parcels of real property. In 1995, Richard purchased a one-half interest in a lot located in Broadwater County for $1,250, again using a portion of the gold he inherited from his father. The only expense associated with this property was the payment of taxes, which were minimal, and which Teresa helped to pay. At trial, the parties agreed the lot was worth $7,500.

¶15 Additionally, Richard held a one-fifth interest in a cabin located near Canyon Ferry Lake, which he and his four siblings had inherited from Richard's parents. Throughout the marriage, Richard and Teresa shared the use of the cabin with Richard's siblings, and paid a proportionate part of the expenses associated with the cabin. At trial, the parties agreed the cabin was worth a total of approximately $60,000.

¶16 In June 2000, Richard and Teresa separated. The following month, Teresa petitioned for dissolution of marriage in district court. At trial, the parties agreed to a shared parenting schedule. However, they disputed the division of assets, many of which Richard considered as non-marital, or as being acquired with his inherited and gifted funds.

¶17 On March 26, 2002, the District Court issued its Findings of Fact, Conclusions of Law, and Decree of Dissolution, concluding that all of the monies acquired during the marriage, regardless of source, were commingled and used for the parties' mutual benefit, and that Teresa's non-monetary contributions as a homemaker equaled the value of Richard's

inherited and gifted contributions to the family residence. As such, the court divided the parties' marital property almost equally, and awarded Teresa one-half of the equity in the family home, or $93,000. The court additionally concluded that Richard's Merrill Lynch account and 1992 Ford pickup, acquired primarily with inherited funds, were marital assets, and awarded each of these items to Richard. However, the court excluded Richard's interests in the Broadwater property and Canyon Ferry cabin from the marital estate, reasoning that these properties were not titled in Teresa's name, and had been kept separate from the parties' other marital assets. Both parties appeal from the District Court's distribution of property, and Teresa additionally appeals from the court's failure to rule on her request for attorney fees.

## STANDARD OF REVIEW

¶18 The standard of review of a district court's division of marital property is whether the district court's findings of fact are clearly erroneous and whether the court correctly applied the law. *In re Marriage of Foreman*, 1999 MT 89, ¶ 14, 294 Mont. 181, ¶ 14, 979 P.2d 193, ¶ 14. A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record convinces us the district court made a mistake. *In re Marriage of Deist*, 2003 MT 263, ¶ 14, 317 Mont. 427, ¶ 14, 77 P.3d 525, ¶ 14. Where substantial credible evidence supports the court's findings and judgment, this Court will not alter the district court's decision unless there is an abuse of discretion. *In re Marriage of Griffin* (1996), 275 Mont. 37, 43, 909 P.2d

6

707, 710-11. The test for abuse of discretion in a dissolution proceeding is "whether the district court acted arbitrarily without employment of conscientious judgment" or whether the district court "exceeded the bounds of reason resulting in substantial injustice." *In re Marriage of Engen*, 1998 MT 153, ¶ 26, 289 Mont. 299, ¶ 26, 961 P.2d 738, ¶ 26.

## DISCUSSION

**¶19 Did the District Court err in awarding Teresa one-half of the equity in the family home when a substantial portion of the funds to construct the home came from Richard's inherited or gifted monies?**

¶20 Richard challenges the District Court's equal division of the equity in the parties' marital residence, arguing that the court erred in applying the provisions of § 40-4-202, MCA (1999), which controls distribution of a marital estate. He maintains that it is well established that a non-acquiring spouse is entitled only to share in the appreciated or preserved value of pre-acquired or inherited property which is attributable to his or her efforts. Richard contends that, because more than half of the equity in the marital residence was funded by his gifts and inheritances, the District Court erred in awarding Teresa half of the equity in this asset. In response, Teresa maintains that her non-monetary contributions as a homemaker facilitated the maintenance and appreciation of the marital residence, and that, consequently, she is entitled to half of the equity.

¶21 Section 40-4-202, MCA, provides, in relevant part:

> In a proceeding for dissolution of a marriage . . . the court, without regard to
> marital misconduct, shall . . . equitably apportion between the parties the

7

property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both. . . . In dividing property acquired prior to the marriage; property acquired by gift, bequest, devise, or descent; property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent; the increased value of property acquired prior to marriage . . . the court shall consider those contributions of the other spouse to the marriage, including:

(a) the nonmonetary contribution of a homemaker;

(b) the extent to which such contributions have facilitated the maintenance of this property; and

(c) whether or not the property division serves as an alternative to maintenance arrangements.

As we have previously recognized, this section provides for equitable distribution of pre-acquired property, regardless of the manner in which title to the property is held, taking into consideration the contributions of the non-acquiring spouse to its preservation or appreciation. *Stoneman v. Drollinger*, 2000 MT 274, ¶ 18, 302 Mont. 107, ¶ 18, 14 P.3d 12, ¶ 18. A non-acquiring spouse is entitled to an equitable share of the appreciated or preserved value of the inherited property which is attributable to his or her efforts. *Stoneman*, ¶ 18. However, pre-acquired or gifted property need not be included in the marital estate where the non-acquiring spouse did not contribute to the property's preservation or appreciation. *See Engen*, ¶ 29.

¶22 In this case, Richard concedes that Teresa's monetary and non-monetary contributions as a homemaker facilitated the maintenance and appreciation of the marital residence. Accordingly, it is undisputed that Teresa is entitled to an equitable portion of the equity in

the family home. Nonetheless, we conclude the District Court erred in its division of the equity in the marital residence because the court failed to correctly apply the provisions of § 40-4-202, MCA.

¶23 The District Court equally divided the equity in the marital residence on the basis that Richard's gifted and pre-acquired properties had been commingled with the parties' joint funds. However, it is well-settled that, "*regardless of who holds title*, pre-acquired or gifted property need not be included in the marital estate unless the nonacquiring spouse contributed to its preservation or appreciation." *Engen*, ¶ 29 (emphasis added). While it is inequitable to award the value of an asset solely to the acquiring spouse upon dissolution when an inheritance is not traceable and both parties have contributed to the increased value, *see In re Marriage of Steinbeisser*, 2002 MT 309, ¶ 37, 313 Mont. 74, ¶ 37, 60 P.3d 441, ¶ 37, that is not the case here. As demonstrated by its factual findings, the District Court was able to reasonably trace the parties' respective contributions to the construction of the marital residence. For instance, the court found that Richard inherited more than $50,000 in the form of gold and silver from his father prior to the marriage, and that, of this amount, $30,000 to $40,000 had been invested in the parties' home. The home was constructed on a lot valued at $51,000 at the time of trial, which had been deeded to the parties by Richard's family. The court additionally found that Richard received a $28,000 gift from his godmother during the construction of the marital residence, and that approximately $20,000 of this was used to build a garage and finish the home's basement. Because Richard's pre-

acquired and gifted contributions were traceable, the District Court erred when it simply divided the equity in the marital residence equally, without regard to the parties' contributions. Teresa is entitled only to an equitable share of the appreciated or preserved value of Richard's pre-acquired and gifted contributions which is attributable to her efforts.

¶24 We note that the District Court further supported its decision to award Teresa one-half of the home's equity by finding that the property division served as an alternative to maintenance. *See* § 40-4-202(1)(c), MCA. However, Teresa did not seek maintenance at trial, and the parties concurred in their proposed findings that neither party was entitled to receive maintenance. Accordingly, we hold the District Court erred in its application of § 40-4-202, MCA, and thus in its division of the equity in the marital residence. We reverse this portion of the decree and remand for further proceedings to determine the portion of equity in the family home to which Teresa is entitled by way of her contributions to the home's preservation and appreciation in value.

¶25 On remand, it is appropriate for the District Court to consider the extent to which Teresa's contributions, including her non-monetary contributions as a homemaker, facilitated the preservation or appreciation of the marital residence. *See* § 40-4-202(1)(a), MCA. As we have previously recognized, the work of a homemaker can be an important contribution because the marital estate may be substantially depleted if those necessary services had to be purchased. *In re Marriage of Smith* (1995), 270 Mont. 263, 268, 891 P.2d 522, 525. In this case, the record reflects that Teresa acted as the primary caretaker of the parties' three

minor children and maintained the family household throughout the parties' marriage. She additionally helped support the family through part-time employment and contributed her Boeing retirement account, a $10,000 value, to the construction of the marital residence. The task upon remand is to determine the extent to which these, and other such contributions, facilitated the preservation or appreciation of the pre-acquired and gifted monies invested in the marital residence, and to apportion the equity between the parties accordingly.

¶26 **Did the District Court err by including the entire value of Richard's Merrill Lynch retirement account and a 1992 Ford pickup in the marital estate when the equity in these properties represented gifted or inherited funds?**

¶27 As in the previous issue, Richard contends the District Court erred by including his Merrill Lynch retirement account, valued at approximately $23,255 at the time of trial, and 1992 Ford pickup within the marital estate because each of these assets were acquired using his gifted monies. In its Findings of Fact and Conclusions of Law, the District Court found that the Merrill Lynch retirement account was funded by Richard's Boeing retirement and approximately $14,000 that he received as a gift from either his mother or godmother. This notwithstanding, the court found the entire account was a marital asset since its value and balance had fluctuated throughout the marriage and its proceeds had been used to pay various marital expenses. The court likewise found that the 1992 Ford pickup was a marital asset, despite determining that it had been purchased primarily with gifted and inherited monies, because Teresa had helped to operate and maintain the vehicle.

11

¶28    The disposition of these properties is once again controlled by § 40-4-202, MCA. As assets acquired by gift, bequest, devise, or descent during the marriage, they are not part of the marital estate unless the non-acquiring spouse made contributions to the preservation or appreciation of that property. *In re Marriage of Rolf*, 2003 MT 194, ¶ 22, 316 Mont. 517, ¶ 22, 75 P.3d 770, ¶ 33; *see also In re Marriage of Herron* (1980), 186 Mont. 396, 404, 608 P.2d 97, 101. Moreover, "a non-acquiring spouse is not entitled to a share of the increase in premarital property when the property's appreciation is due simply to market factors." *In re Marriage of Steinbeisser*, ¶ 47.

¶29    As we have stated before, the first prong of our standard of review of a district court's finding is whether it is supported by substantial evidence. *In re Marriage of Gerhart*, 2003 MT 292, ¶ 29, 318 Mont. 94, ¶ 29, 78 P.3d 1219, ¶ 29. In this case, Teresa presented no evidence that she contributed to the appreciation or preservation of Richard's Merrill Lynch retirement account, which fluctuated in value over the course of the marriage. The fact that funds from the account were occasionally used for family expenses does not justify an equal division of this asset. *See In re Marriage of Luisi* (1988), 232 Mont. 243, 245, 756 P.2d 456, 458 (finding that husband did not contribute to preservation of inheritance where, due to insufficient household budget, wife was forced to use her inheritance to feed, clothe, and shelter her family). Furthermore, Teresa's use and periodic maintenance of the 1992 Ford pickup does not constitute a contribution so significant as to entitle her to half of its value. Because the District Court's findings with respect to the Merrill Lynch account and 1992

12

Ford pickup are not supported by substantial credible evidence, they are clearly erroneous, and the conclusion of law based thereon is incorrect. Accordingly, we reverse that portion of the decree, and award these assets to Richard.

**¶30    Did the District Court err in excluding Richard's fractional interest in his family's properties in Broadwater County and a cabin near Canyon Ferry Lake from the marital estate?**

¶31    On cross-appeal, Teresa argues that the District Court erred in failing to award her an equitable portion of the appreciation in the Canyon Ferry cabin and Broadwater properties, because the parties paid taxes and expenses associated with the properties from marital funds. However, as Richard points out, the Broadwater property was acquired strictly with his inherited monies, and the taxes associated with the property were minimal, approximately $40 per year. The District Court additionally found that the marital funds expended to maintain the Canyon Ferry cabin were minimal, and excluded this asset from the marital estate.

¶32    In determining the exact distribution of an asset acquired by gift or bequest during the marriage, no set formula can be established as to how the assets should be equitably distributed. *Herron*, 186 Mont. at 402, 608 P.2d at 100. In this case, there is no evidence that Teresa made any significant contribution to the preservation or appreciation of these non-marital assets. Accordingly, we hold the District Court did not err in excluding the Broadwater property and Canyon Ferry Lake cabin from the marital estate.

**¶33    Did the District Court err in not awarding Teresa attorney fees?**

13

¶34 Teresa asserts that the District Court erred in disregarding her request for attorney fees, which she sought pursuant to her Verified Petition for Dissolution. However, Teresa presented no evidence or argument in support of her request for attorney fees after initially raising it as an issue in her petition, and we will not fault the District Court for failing to consider evidence which was never presented. *See In re Marriage of Rush* (1985), 215 Mont. 498, 502, 699 P.2d 65, 67 (affirming district court's denial of attorney fees where no supporting evidence was submitted at any of the hearings). We further note that Teresa effectively waived this as an issue on appeal when, in her Proposed Findings of Fact and Conclusions of Law, she concluded that "[e]ach of the parties has been allocated resources sufficient such that each party is responsible for his or her own attorneys fees and costs." Accordingly, we cannot conclude that the District Court erred in disregarding Teresa's request for attorney fees.

¶35 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

/S/ JIM RICE

14

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART