FILED

01/10/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0104

DA 22-0104

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 5N

IN RE THE MARRIAGE OF:

JUDY L. SHIFFMAN,

   Petitioner and Appellee,

 and

WILLIAM F. SHIFFMAN,

   Respondent and Appellant.

 and

SEAN CRUM,

   Intervenor and Appellee.

<br>

| APPEAL FROM: | District Court of the Eleventh Judicial District, In and For the County of Flathead, Cause No. DR-20-701(A) Honorable Amy Eddy, Presiding Judge |
|---|---|

COUNSEL OF RECORD:

   For Appellant:

     Peter F. Carroll, Attorney at Law, Kalispell, Montana

   For Appellee:

     Paula M. Johnson-Gilchrist, Johnson-Gilchrist Law Firm, P.C., Whitefish, Montana

   For Intervenor:

     Kai Groenke, Law Office of Kai Groenke Law, P.C., Kalispell, Montana

Submitted on Briefs:  November 2, 2022

Decided:  January 10, 2023

Filed:

Clerk

2

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 William F. Shiffman (William) appeals from the Findings of Fact, Conclusions of Law, Decree of Dissolution and Order Re: Intervenor's Claims by the Eleventh Judicial District Court, finding an alleged premarital agreement unenforceable and dividing the marital estate between William, Judy L. Shiffman (Judy), and Sean Crum (Sean). We affirm.

¶3 William and Judy married on September 12, 1998 in Flathead County, Montana, separated in 2020, and filed for dissolution in November 2020. There were no children of their marriage, though both parties had prior marriages and adult children from those marriages. One of Judy's children, Sean, intervened in the case.

¶4 William owned real property at the time of the parties' marriage, including one parcel of approximately 15 acres (15-acre Parcel). After the marriage, the parties utilized several family transfers and boundary line adjustments to subdivide and transfer various parcels of real property, some of which were sold. Around the same time, the parties allowed Sean to build a home on a 3.25-acre portion of the 15-acre Parcel (Sean's Property) and promised to subdivide the 15-acre Parcel to deed Sean's Property to Sean under the conditions that Sean pay all the costs of construction, taxes, and insurance, maintain the

property, and live there to assist the parties as needed. Sean accepted this offer, and during construction and after completion of his residence, performed and satisfied all of Judy and William's conditions related to their promised conveyance of Sean's Property. William and Judy never subdivided the 15-acre Parcel nor fulfilled their promise to convey Sean's Property to Sean.

¶5    In dissolution proceedings, William alleged he and Judy willingly and voluntarily entered into a document titled "Pre-Marital Agreement" (PMA) on or about September 9, 1998. It is undisputed that Judy was not represented by independent counsel when the alleged PMA was executed, and Judy denies signing said document. She testified she had no recollection of reviewing or signing any premarital agreement, and that the alleged PMA specifically describes property she did not acquire until years later (a sewing machine, serger, a computer, and several pieces of office equipment) and references real property that had not yet been built (Cabin C). Sean, who was involved with Judy's personal affairs, testified he had no knowledge or recollection of any premarital agreement. William was the only person who could testify to any recollection of the drafting and execution of the PMA. According to William's testimony, the document was a form allegedly prepared by attorney James Howard with input from both William and Judy, but Howard also testified forms like the PMA can be obtained on the web. Judy testified she had no recollection of a James Howard, and neither William nor Judy could attest to the original provenance of the alleged PMA form. James Howard testified he recalls William, but did not recall Judy, and further testified that while his signature appears on the document, he does not recall

4

preparing it and certain aspects of the form do not follow his normal practices for such forms.

¶6 The District Court determined the alleged PMA was unconscionable and unenforceable due to Judy's lack of counsel, lack of voluntary execution, and myriad ambiguities and contradictions in the document. As such, the District Court used its broad discretion to craft a fair and equitable distribution of the marital property, which included an award to Judy of approximately 8.95 acres of the 15-acre Parcel and three cabins; to William, approximately 3 acres on the north end of the 15-acre Parcel and other real property located at 121 Patriot Trail, Lakeside, Montana already in his name (several acres, his residence, and a rental unit); and to Sean, sole ownership of Sean's Property[1] (approximately 3.25 acres of the 15-acre Parcel and his residence).

¶7 As a district court's division of marital property is an equitable proceeding, we review the court's findings of fact for clear error and its conclusions of law for correctness. *In re Marriage of Funk*, 2012 MT 14, ¶ 6, 363 Mont. 352, 270 P.3d 39; *Estes v. Estes*, 2017 MT 67, ¶ 12, 387 Mont. 113, 391 P.2d 752. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of evidence, or if upon reviewing the record, the court is left with the definite and firm conviction that the district court made a mistake. *In re L.H.*, 2007 MT 70, ¶ 13, 336 Mont. 405, 154 P.3d 622.

---

[1] It is noted that, at trial, both parties advocated for and agreed to distribute Sean's Property to Sean as sole owner of the property.

¶8 We review a district court's conclusions of law for correctness. The district courts have broad discretion to distribute the assets of a marital estate equitably. *In re Marriage of Shirilla*, 2004 MT 28, ¶ 8, 319 Mont. 385, 89 P.3d 1. On appeal, each case must be examined individually, with an eye to its unique circumstances, and absent clearly erroneous findings, the district court's property division must be affirmed. *Estes*, ¶¶ 12-13.

¶9 We may review the division of marital property and award of maintenance to determine if there was an abuse of discretion. *In re Marriage of Thorner*, 2008 MT 270, ¶ 21, 345 Mont. 194, 190 P.3d 1063. The test for abuse of discretion is whether the district court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *Thorner*, ¶ 21. The issue of unconscionability of a premarital agreement must be decided as matter of law under § 40-2-608(3), MCA.

¶10 William contends the District Court's determination that the parties' alleged PMA is unenforceable is clearly erroneous and an abuse of discretion. Judy argues the District Court's findings of fact regarding the PMA's validity are supported by substantial evidence and not clearly erroneous, and the District Court correctly determined, as a matter of law under § 40-2-608(3), MCA, that the PMA was unconscionable when executed. We agree with Judy.

¶11 Montana has generally adopted the Montana Uniform Premarital Agreement Act as set forth in §§ 40-2-601 *et seq.*, MCA. A premarital agreement must be in writing and signed by both parties. Section 40-2-604, MCA. Montana law recognizes several defenses

to the validity of a premarital agreement, and provides a premarital agreement is unenforceable if the party against whom enforcement is sought proves that

> (a) that party did not execute the agreement voluntarily; or
> (b) the agreement was unconscionable when it was executed and, before execution of the agreement, that party: (i) was not provided a fair and reasonable disclosure of the property or financial obligations of the other party; (ii) did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and (iii) did not have or reasonably could not have had adequate knowledge of the property or financial obligations of the other party.

Section 40-2-608(1), MCA.

¶12 The record indicates either of the above defenses are applicable here. There is substantial evidence and testimony to support Judy's argument that she did not voluntarily sign the alleged PMA. After a three-day trial and extensive testimony, the District Court made the following relevant findings of fact: William alleged (and Judy denied) he and Judy willingly and voluntarily entered into the PMA, Judy was not represented by independent counsel and denied signing the document, the document referenced property Judy did not acquire until years after the alleged signing of the PMA, and the attorney who William alleged prepared the PMA could not testify to his recollection of Judy or of preparing said document. Our review of the record shows these findings are not clearly erroneous, which renders the premarital agreement unenforceable under § 40-2-608(1)(a), MCA.

7

¶13    The issue of unconscionability of a premarital agreement must be decided by the court as a matter of law. Section 40-2-608(3), MCA. Determinations of unconscionability are based on careful scrutiny of the underlying facts of each particular case, and because a district court's determinations regarding unconscionability are discretionary, we review these determinations for abuse of discretion. *In re Marriage of Pearson*, 1998 MT 236, 291 Mont. 101, 965 P.2d 268.

¶14    The findings on which the District Court based its determination of unconscionability are supported by substantial evidence presented at trial and are not clearly erroneous, therefore we find the District Court did not abuse its discretion when it determined the PMA was unconscionable. No witness could testify to the provenance of the form used for the PMA, and James Howard could not recall preparing it. William is the drafter of the PMA, as the sole party arguing for its validity and as the only person who testified to the circumstances surrounding its alleged creation and execution. The District Court's findings of fact and conclusions of law are consistent with the rule in § 28-3-206, MCA, construing ambiguous and inconsistent contract language against the drafter, as the PMA contains ambiguities and inconsistencies which the District Court correctly construed against William. For example, Section Five of the PMA allows for gifts to each other which is inconsistent with Section Fifteen, which requires the return and reconveyance of any gifts in the event of divorce, separation, or annulment.

¶15    We conclude the District Court properly analyzed the issues according to the guidelines set forth in § 40-2-608, MCA, and was within its discretion in concluding, as a

8

matter of law and as supported by substantial evidence in the record, that the PMA was unconscionable and unenforceable.

¶16   William argues the District Court's findings of fact regarding several issues in equity are clearly erroneous or do not have support in the record. Judy contends the credible evidence in the record supports the District Court's findings on the equity issues William raises, all of which concern valuation and distribution of the marital estate. Our review of the record shows the District Court thoroughly examined the evidence presented in issuing its findings of fact, which are not clearly erroneous, and it acted within its discretion in reaching an equitable division of the martial estate based on its sound factual findings. We will not disturb the District Court's decision.

¶17   William contends the District Court's conclusions of law based on many of the above factual findings regarding issues of property division and maintenance are clearly erroneous and an abuse of discretion. Judy argues the property division (which the record shows includes considerations of maintenance) is based on sound findings of fact supported by the record, and that it was reasonable and fair for the District Court to fashion an equitable division by using its discretion to distribute the property between the parties in a manner as to avoid awarding maintenance. We strongly prefer the division of property over spousal maintenance when distributing marital estates: "Property and maintenance awards are to be considered in tandem, with a clear preference for awarding property first." *In re Marriage of Rolf*, 2003 MT 194, ¶ 25, 316 Mont. 517, 75 P.3d 770. Moreover, based upon its correct finding that Judy would be entitled to spousal support if the PMA were

enforced to avoid having to access public benefits, the District Court exercised its discretion wisely when it stopped short of awarding such support, choosing instead to order an equitable division of the estate with each receiving sufficient assets to support themselves. As such, we will not disturb the District Court's careful findings regarding maintenance nor its correct decision to utilize property division as an equitable result that accounts for the parties' debts and maintenance needs.

¶18 Finally, William contends the District Court erred in valuation of the marital estate by averaging valuations of the parties' experts. The valuation of the marital estate is a discretionary ruling and "valuation need only be reasonable in light of the evidence submitted." *In re Marriage of Dirnberger*, 2007 MT 84, ¶ 23, 337 Mont. 56, 154 P.3d 1227.

> We have recognized district courts face a considerable task in determining property valuation. In the final analysis, it is not a question of whether we would be persuaded to reach a different conclusion after considering the same evidence. Rather, the test is whether the district court had adequate evidence to support its conclusions.

*Collins v. Collins*, 2004 MT 365, ¶ 26, 324 Mont. 500, 104 P.3d 1059.

¶19 Here, the District Court made extensive findings based on expert opinions offered by both parties and was well within its discretionary limits to average the values presented to accomplish a fair and equitable division of the property. Moreover, the District Court's property division, including the award to Sean of Sean's property (which both parties advocated for and agreed to at trial), accomplishes an equitable division given the unique circumstances of this case.

10

¶20     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.  The District Court's interpretation and application of the law were correct, its findings of fact are not clearly erroneous, and its ruling was not an abuse of discretion.

¶21     Affirmed.

/S/ INGRID GUSTAFSON


We concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE