FILED

November 17 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 08-0482

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 392

DELIA K. KELLY,

        Petitioner and Appellee,

    v.

JOSEPH W. THOMPSON,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DV-06-113
Honorable James A. Haynes, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        P. Mars Scott and Thorin A. Geist; P. Mars Scott Law Offices, Missoula,
Montana

    For Appellee:

        Philip J. O'Connell, O'Connell Law Office, PLLC, Missoula, Montana

Submitted on Briefs:  June 25, 2009

Decided:  November 17, 2009

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 The Twenty-First Judicial District Court, Ravalli County, entered a decree dissolving the common-law marriage and distributing the marital estate of Joseph W. Thompson and Delia Kelly. Thompson appeals. The issues raised are:

¶2 Issue 1: Did the District Court err in determining that the common-law marriage between the parties commenced in February 2005, rather than July 1988?

¶3 Issue 2: Did the District Court err in the distribution of the marital estate?

¶4 Joe Thompson and Delia "Dee" Kelly met when they worked at a veterinary clinic in Missoula in 1988. Joe was a veterinarian and Dee a veterinarian's assistant. At the time, Dee was going through a divorce that became final in late July 1988. Joe moved into Dee's home on 35th Street in Missoula around July 1988. The parties do not dispute they lived together from 1988 through 2005.

¶5 Joe claims that shortly after he moved in, he and Dee exchanged vows to be faithful, to be exclusive, to love each other forever, and to support each other's financial, physical and emotional needs. Joe asserts this was the beginning of their common-law marriage. Dee denies this exchange ever took place. Dee contends the common-law marriage did not exist until 2004, when she acknowledged she was married.

¶6 At trial, the parties presented a great deal of conflicting evidence concerning when they mutually consented to marriage and whether they held themselves out as husband and wife. After hearing this evidence and entering detailed findings of fact, the District Court found that the common-law marriage began on February 7, 2005, when Joe prepared and

Dee signed a letter to the Ravalli County Planning Department in which he states Dee is his wife. Joe appeals the court's finding as clearly erroneous.

¶7 Joe also challenges the District Court's distribution of the marital estate. His claim on appeal is that the District Court erred in its findings of fact concerning his contributions to maintaining, preserving, developing, enhancing and improving real properties that are described for purposes of this opinion as the 35th Street residence, the Garfield property, and the Kootenai Creek property.

¶8 Joe claims that while he and Dee lived in the 35th Street residence, he improved its value such that it sold for a profit of $50,000 and that Dee's mother, Eunice Kelly, used this profit to provide part of the purchase price of the Kootenai Creek property. Eunice Kelly testified that Joe had no interest in the 35th Street residence and, in any event, only $325 of gain was realized from the sale of this property. No documentation concerning value or the sale price of this property was introduced into evidence. After hearing the testimony, the District Court found Joe's version of events not to be credible and believed Eunice Kelly's testimony. Thus, in the distribution of the marital estate, the District Court did not credit Joe with a dollar value associated with the 35th Street residence.

¶9 The Garfield property consists of land and an office building in Missoula that was given to Dee by her parents and leased to Joe's veterinary business, Southgate Animal Hospital. Joe claims he enhanced the value of this property by designing the interior of the building, working with the architect and the builder when the building was constructed, paying insurance and taxes and doing some routine maintenance on the property. The

3

District Court found Joe's description of how he enhanced the value of this property of questionable credibility and determined his efforts did not contribute significantly to the value of the property itself. Thus, no part of the Garfield property was considered to be a part of the marital estate.

¶10 Dee's parents purchased the Kootenai Creek property when they sold the 35th Street residence. They deeded the property to Dee as a gift. Joe contended that the property was a gift to both Dee and him. Again, however, the District Court found as a matter of fact that Joe's testimony was not credible and the property was gifted only to Dee.

¶11 After hearing the evidence, the District Court found that only a part of the value of the Kootenai Creek property, $34,871, was appropriately considered as part of the marital estate. The District Court found that this amount of the property's value was due to the efforts of the parties and the remaining part of the property's value was increased by market factors. The District Court then distributed $17,434.50 to Joe, which is half of $34,871.

¶12 The District Court also found that the remainder of an inheritance Joe received in the amount of $200,000 was not a part of the marital estate, ordered that household personal property be distributed according to a master's evaluation, and placed a value on the other property of the marital estate. Ultimately, the District Court valued the marital estate at $168,562 and distributed half to Joe and half to Dee. Joe does not dispute the values the District Court placed on the Garfield property and the Kootenai Creek property. He claims the District Court erred in not including more of the value of these properties in the marital estate and crediting him with that value.

4

¶13 We review the district court's findings of fact concerning common-law marriage to determine if they are clearly erroneous. *In re Estate of Ober*, 2003 MT 7, ¶ 7, 314 Mont. 20, 62 P.3d 1114. Further, we review a district court's division of marital property to determine whether the findings upon which the district court relied are clearly erroneous. *In re Marriage of Clark*, 2003 MT 168, ¶ 7, 316 Mont. 327, 71 P.3d 1228. We will conclude that a finding of fact is clearly erroneous if it is not supported by substantial evidence, the district court misapprehended the gravity of the evidence, or if our examination of the record convinces us that the district court made a mistake. *In re Marriage of Foster*, 2004 MT 326, ¶ 9, 324 Mont. 114, 102 P.3d 16. If the findings are supported by substantial credible evidence, "we will affirm the distribution of property unless the district court abused its discretion." *Marriage of Clark*, ¶ 7. The test for abuse of discretion in a dissolution proceeding is whether the district court "acted arbitrarily without employment of conscientious judgment," or whether the district court "exceeded the bounds of reason resulting in substantial injustice." *Marriage of Clark,* ¶ 7.

¶14 We review the district court's interpretation of the law to determine whether the court's interpretation is correct. *Marriage of Clark*, ¶ 7.

¶15 *Issue 1: Did the District Court err in finding and concluding that the common-law marriage of the parties began in February 2005, rather than July 1988?*

¶16 Montana recognizes common-law marriages. Section 40-1-403, MCA. To establish a common-law marriage, the party asserting the existence of the common-law marriage must prove: (1) the parties were competent to enter into a marriage; (2) the parties assumed a

marital relationship by mutual consent and agreement; and, (3) the parties confirmed their marriage by cohabitation and public repute. *Ober*, ¶ 9. The mutual consent of the parties does not need to be expressed in any particular form and can be implied from the conduct of the parties. *Matter of Estate of Hunsaker*, 1998 MT 279, ¶ 34, 291 Mont. 412, 968 P.2d 281. Because the common-law marriage elements cannot be established immediately, particularly cohabitation and public repute, we do not require the party seeking to establish the common-law marriage to prove they all happened immediately or instantly. *In re Marriage of Swanner-Renner*, 2009 MT 186, ¶ 21, 351 Mont. 62, 209 P.3d 238.

¶17 Joe contends he and Dee were married at common law in 1988 while they lived at the 35th Street residence. He claims that all of his contributions to the marital estate since that time must be credited to him in the distribution of the marital estate. He also claims that the date of the common-law marriage is not significant because, under this Court's holding in *Marriage of Clark*, he is entitled to the value of the contributions he made to the marital estate since he and Dee began cohabitating in 1988.

¶18 In *Marriage of Clark*, this Court held that where a married couple had lived together for six years before they married, it would be inequitable to disregard the period of premarital cohabitation when considering a spouse's contributions to the marital estate. *Marriage of Clark*, ¶¶ 14, 16 (citing *In re Marriage of Rolf*, 2000 MT 61, 303 Mont. 349, 16 P.3d 345).

¶19 Dee does not contest that she and Joe were married at common law. She agrees with the District Court that the common-law marriage began in February 2005. The District

6

Court heard a great deal of conflicting evidence concerning when the common-law marriage began. After considering all of the evidence, the District Court made extensive findings of fact and held that the parties were married in February 2005. The District Court's findings of fact are not clearly erroneous and its determination of when the marriage began will not be disturbed.

¶20 Dee does not contest that *Marriage of Clark* applies and Joe's contributions to the marital estate during the time they lived together may be considered. Likewise, the District Court considered contributions Joe made to the marital estate prior to February 2005 in its distribution of the marital estate. Thus, while it is important that the parties were married, it makes no appreciable difference in this particular case when the marriage occurred.

¶21 *Issue 2: Did the District Court err in the distribution of the marital estate?*

¶22 As noted above, Joe claims that, in distributing the marital estate, the District Court ignored his significant contributions to three pieces of real property: the 35th Street residence, the Garfield property, and the Kootenai Creek property. Joe testified at trial about the contributions he claims to have made maintaining, preserving, developing, enhancing and improving these properties. He introduced into evidence little documentation concerning his contribution claims. He did not testify or provide other evidence of the dollar value of his claimed contributions. On appeal, he asks this Court to remand for a new trial so he can secure a fair distribution of the marital estate.

¶23 Section 40-4-202, MCA, provides that the court shall equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired

7

and whether the title is in the name of the husband or wife or both.  With property acquired prior to marriage or by gift, the court shall consider those contributions of the nonacquiring spouse, including the extent to which such contributions have facilitated the maintenance of this property.  Section 40-4-202(1)(b), MCA.

> We have previously construed this provision to mean that regardless of who holds title, preacquired or gifted property need not be included in the marital estate unless the nonacquiring spouse contributed to its preservation or appreciation.  In that event, we have held that the nonacquiring spouse is entitled to an equitable share of the appreciated or preserved value which is attributable to his or her efforts.

*Foster*, ¶ 11 (citing *In re Marriage of Engen*, 1998 MT 153, ¶ 29, 289 Mont. 299, 961 P.2d 738).  However, a nonacquiring spouse is not entitled to a share of the increase in premarital property after marriage when the property's appreciation is due simply to market factors. *Foster*, ¶ 14.

¶24   Joe first claims that he contributed to the value of the 35th Street residence and that Eunice Kelly invested the gain of about $50,000 in the Kootenai Creek property.  Thus, he argues that the District Court erred when it did not credit him with any part of the gain on the 35th Street property in its distribution of the Kootenai Creek property.  No documentation was introduced into evidence supporting Joe's contention.  Eunice Kelly testified that there was only a negligible gain when the property was sold.  The District Court found Eunice Kelly's testimony credible.  The district court is in the best position to judge the credibility and demeanor of the witnesses while testifying.  Where there is conflicting evidence in the record, it is within the province of the district court to pass on the credibility of witnesses. *Taylor v. State Compensation Ins. Fund*, 275 Mont. 432, 439, 913 P.2d 1242, 1246 (1996).

We will not substitute our judgment for the district court's findings when, as in this case, those findings are based on the credibility of the witnesses. *Stoneman v. Drollinger*, 2000 MT 274, ¶ 29, 302 Mont. 107, 14 P.3d 12. The District Court did not err in refusing to distribute to Joe a larger portion of the marital estate based on his claimed contributions to the value of the 35th Street residence.

¶25   Regarding the Garfield property, Dee's parents purchased the property and paid for the construction of the office building that is owned by Delia, Inc., a corporation which was formed with the assistance of Dee's parents and is solely owned by Dee. Joe claims he improved the value of the property because he located the property, helped plan and design the building, and made improvements to the property, including supervising the construction and excavation, providing materials, installing and maintaining the landscaping, painting, removing snow, mowing the lawn, and performing other routine maintenance. Joe provides no documentary evidence of the amount his contributions may have increased the value of the property.

¶26   Believing Eunice Kelly that she and her husband gifted the Garfield property solely to Dee, purposely excluding Joe, the District Court found that the Garfield property is Dee's separate property and is not part of the marital estate. As for Joe's contributions, the District Court found that Joe is a commercial tenant of the Garfield property and his efforts did not enhance the value of the property but helped to develop his business. The District Court also found that Dee had contributed to the success and profitability of Joe's business over the years by working for $2.98 per hour. The District Court found that any remaining value of

9

Joe's contributions to the building was fairly offset by Dee's contributions to the veterinary business that was distributed to Joe.

¶27 There is substantial evidence in the record supporting these findings. We cannot say the court made a mistake or misapprehended the evidence by finding that Joe's contributions to the Garfield property were in exchange for Dee's contributions. The District Court also did not make a mistake by finding that Joe's efforts did not contribute much to the value of the property, but instead contributed to the development and improvement of his veterinary business that was distributed to him. The District Court did not abuse its discretion when it distributed the Garfield property to Dee without increasing Joe's share of the marital estate.

¶28 Finally, Joe attacks the District Court's valuation and distribution of the Kootenai Creek property. The Kootenai Creek property is a forty-acre parcel located in the Bitterroot Valley in Ravalli County. Dee's parents purchased the property for $123,000 and gave it to Dee via quitclaim deed in 1992. Dee's parents paid to build a home on the property that cost $170,000. Dee's parents also paid the taxes on the property and insured it until 2002, when they paid off the mortgage securing the purchase price. Dee and Joe lived on the property from when the house was built in 1992 until they separated.

¶29 Joe contends Dee's parents gifted the Kootenai Creek property to both Dee and him, but left his name off the title because of their concern it could be taken if Joe failed to pay his student loans. At trial, Eunice Kelly disputed Joe's contention, testifying that she and her late husband gifted the property solely to Dee and even consulted an attorney to prevent Joe from claiming an interest in the property. They had the attorney prepare a deed conveying

10

the property to Dee alone as a single person. The District Court found Eunice Kelly's testimony credible and determined Dee's parents gifted the Kootenai Creek property solely to Dee. Like the District Court's decisions concerning the 35th Street property and the Garfield property, substantial evidence supports the District Court's finding and it is not clearly erroneous.

¶30 Joe retained an expert who valued the Kootenai Creek property at $1,100,000. The expert valued the land at $600,000 and the house at $500,000. The parties stipulated to the District Court, and do not dispute on appeal, that these values are correct.

¶31 The expert testified the entire increase in the value of the bare land, from $123,000 to $600,000 was due to market appreciation. The District Court accepted this testimony and found that neither Joe nor Dee contributed to the increase in the value of the land. Thus, the court considered the $600,000 value of the land as Dee's separate property. This finding is based on substantial evidence in the record and not clearly erroneous.

¶32 Nevertheless, a nonacquiring spouse is entitled to an equitable share of the appreciated or preserved value of property which is attributable to his or her efforts. *Foster*, ¶ 11; *Engen*, ¶ 29. On appeal, Joe contends the expert erred because the record shows he contributed to the increase in the value of the land because he preserved an existing water right attached to the property,[1] designed and directed the construction of two wetlands, planted vegetation to enhance the property for wildlife use, planted between 5,000 and

---

[1] In 1995, Joe and Dee discovered that third parties had water rights to a ditch on their property. Joe initiated litigation on the matter that eventually resulted in buying out the water rights of the other

11

10,000 trees, cut and stacked burned and dead trees, built and maintained fencing, installed and maintained irrigation equipment, planted and maintained landscaping, and negotiated with insurance companies for settlements relating to hail damage. However, the District Court found that the litigation that Joe precipitated neither improved nor maintained the value of the property, most of the trees he planted and re-planted died, and Joe overstated his contributions to any increase in the property's value.

¶33 A district court has broad discretion in determining the value of property in a dissolution action. As long as the valuation is reasonable in light of the evidence submitted, we will not disturb the finding on appeal. *In re Marriage of Milesnick*, 235 Mont. 88, 94-95, 765 P.2d 751, 755 (1988). The District Court based its finding that the value of the land increased solely because of market appreciation on the opinion of an expert. The parties stipulated that the expert was qualified to give her opinion. While Joe may not agree with the District Court's decision to believe the expert, he has not shown error.

¶34 At trial, the expert did not place an exact figure on the value of the home. Still, as the value of the entire property was stipulated to be $1,100,000, and the land was worth $600,000, the District Court correctly determined that the current value of the home was approximately $500,000.

¶35 The expert testified that, in the Bitterroot Valley, market factors alone increased the value of improvements on real property generally at about 10% per year from 1993 until 2000 and then slowed down from 2000 until 2005. Basing its finding on the expert's

parties for $50,000. However, the record shows Eunice Kelly paid the settlement amount and

testimony and considering the initial cost of the house and the increase in value due to market factors, the District Court determined the value of the home on the Kootenai Creek property was $465,129. The District Court started with the agreed value of the entire property of $1,100,000, then subtracted the value of the land, $600,000, and the value of the house, $465,129, and logically determined that Joe and Dee's contributions increased the value of the property in the amount of $34,871. The District Court included this amount in the marital estate and distributed it equally to Joe and Dee. These findings of fact are not clearly erroneous.

¶36    The district judge who saw and heard the witnesses made determinations of the relative credibility of the witnesses. The findings of fact concerning what property was gifted solely to Dee and the quantum of each party's contributions to the maintenance and increase in value of the marital estate are supported by the evidence. The calculations concerning the District Court's valuation of the property are based squarely on properly admitted evidence. The District Court clearly stated the reasons upon which it based its distribution of the marital estate and we conclude it did not abuse its discretion.

¶37    The judgment of the District Court is affirmed.

/S/ JOHN WARNER

We Concur:

/S/ MIKE McGRATH
/S/ W. WILLIAM LEAPHART

---

attorney fees.

13

/S/ JIM RICE
/S/ PATRICIA O. COTTER
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS