DA 11-0209

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 14

IN RE THE MARRIAGE OF:
BERNITA FUNK,

      Petitioner and Appellee,

  and

KEVIN FUNK,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DR 09-45
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           P. Mars Scott (argued), Attorney at Law, Missoula, Montana

      For Appellee:

           Kay Lynn Lee (argued), Henning, Keedy & Lee, PLLC,
Kalispell, Montana

Argued and Submitted: November 9, 2011

Decided: January 31, 2012

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Kevin and Bernita June Funk (hereinafter Kevin and June) were married in December 1990. In 1996, Kevin inherited 2.5 acres of lakefront property on Flathead Lake and 113 acres of non-lakefront property as well as several vehicles and an undisclosed amount of cash. June filed for dissolution in February 2009. In distributing the marital assets upon dissolution, the District Court included Kevin's inherited real property in the marital assets and awarded a portion to June. Kevin appeals. We affirm in part and remand in part.

## ISSUE

¶2 The dispositive issue on appeal is whether the District Court erred in its application of the law when it awarded June a portion of Kevin's inherited property.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Kevin and June married in December 1990 in Polson, Montana. At the time they married, June worked as a solderer in Polson and Kevin had been working for Montana Rail Link (MRL) for approximately three years. In 1993, June, who has a GED but no post-secondary education, became a full-time homemaker. In 1996, Kevin's father died and Kevin inherited over 115 acres of real property, 2.5 acres of which is lakefront property on Flathead Lake. The remaining two parcels consisted of 73 acres and 40 acres respectively. He also inherited some automobiles and cash. The couple had a daughter in 1997. In late 2007, Kevin quit working for MRL maintaining it was an unsafe working environment. He began living on the proceeds from his IRA and engaging in unsuccessful day trading. In February 2009, following a several month separation, June

2

filed for dissolution. While the dissolution proceeding addressed numerous disputes between the parties, including a parenting plan for their daughter, the focus of this appeal is the District Court's distribution of the property Kevin inherited or acquired with inherited funds.

¶4 The District Court issued a detailed 16-page Findings of Fact, Conclusions of Law and Order of Decree of Dissolution (Decree) on October 21, 2010. At the time the Decree was issued, June was 60 years old and Kevin was 47. In the Decree, the court valued the inherited lakefront property at $550,000 and the remaining inherited real property at $415,000. It awarded June $275,000, representing one-half of the value of the lakefront property, and $69,167, representing one-third of the increased value of the non-lakefront property. Kevin was instructed to pay June the total amount of $344,167 within six months of the Decree. However, if Kevin could not finance June's award by any means other than selling the property, the court instructed Kevin to sell the property within two years of the date of the Decree.

¶5 The court also awarded June one-half of 17/20s (the years of marriage/the years of MRL employment) of Kevin's railroad retirement, the couple's 2005 Toyota Sienna, and $42,547 representing the value of a 2011 Toyota Sienna Kevin purchased post-separation. Additionally, by agreement of the parties, Kevin retained substantial personal property, including but not limited to several vehicles, jet skis, tractors, trailers and a sailboat. The court further instructed Kevin to pay June $500 per month in maintenance, retroactive to March 2009, for a period of five years or until June received her entire award. Kevin appeals certain of these rulings.

3

## STANDARD OF REVIEW

¶6 Section 40-4-202, MCA, governs the distribution of a marital estate. A district court's interpretation of a statute is a conclusion of law that we review de novo for correctness. *In re C.D.H.*, 2009 MT 8, ¶ 21, 349 Mont. 1, 201 P.3d 126. Section 40-4-202, MCA, vests the district court with broad discretion to apportion the marital estate in a manner equitable to each party under the circumstances. We review a district court's division of marital property to determine whether the court's findings of fact are clearly erroneous and the conclusions of law are correct. Absent clearly erroneous findings, we will affirm a district court's division of property and award of maintenance unless we identify an abuse of discretion. As we have stated previously, each case must be examined individually, with an eye to its unique circumstances. *Marriage of Spawn*, 2011 MT 284, ¶ 9, 362 Mont. 457, ___ P.3d ___ (citations omitted).

¶7 We have further instructed that "the factors listed in [§] 40-4-202, MCA, must be considered and referred to in the [district] court's findings and conclusions and there must be competent evidence presented on the values of the property." *Marriage of Collett*, 190 Mont. 500, 504, 621 P.2d 1093, 1095 (1981).

## DISCUSSION

¶8 *Did the District Court err in its application of the law when it awarded June a portion of Kevin's inherited property upon dissolution of the marriage?*

¶9 After the appeal briefs were submitted in this case, the Court ordered the parties to present oral arguments. Kevin's argument was somewhat different from that presented in his written appellate brief. In his brief he argued inherited property should not be

4

*included* in the marital estate if the non-inheriting spouse did not contribute to the preservation, maintenance or improvement of the property. However, during oral argument, both parties maintained that under § 40-4-202, MCA, inherited property should not be automatically *excluded* from the marital estate; rather, a district court should be allowed to determine if the non-inheriting spouse is entitled to any portion of the inherited property based upon an analysis of the factors set forth in the statute. If the non-inheriting spouse is not entitled to any portion of the inherited property after the court has analyzed the statutory factors, a district court should *award* the inherited property to the inheriting spouse rather than excluding it from the marital estate.

¶10 In addition to the arguments made on behalf of their respective clients, both counsel pointed out that our jurisprudence pertaining to § 40-4-202, MCA, is confusing for practitioners and has led to conflicting results. Attorney Scott stated:

> Where the confusion has arisen . . . are the cases that . . . talk about excluding out from consideration inherited property or premarital property or gifted property. When you read § [40-4-202, MCA] there is no opportunity to exclude out any property.

> .   .   .

> If we are to . . . be intellectually honest about how to deal with these kinds of issues, we have to get rid of all those "excluded" cases because it creates so much confusion with the practitioners . . . in the field about "do we consider the inherited property? Do we not consider the inherited property?" I show up at settlement conferences and people refuse to give me any information about the inherited property. We have discovery wars over this where people say "objected – you don't get to learn anything about the inherited property because there was no contribution." We need to get over that because that's where all the cost and expense is going in these cases. [Additionally], there are a lot of attorneys out there that have made a ton of money fighting these wars legitimately on either side of the

5

case. . . . I can find the cases that will support whatever position I want to take.

Similar comments and concerns have been raised by other family law practitioners in briefs filed with this Court over the years.

¶11 Based upon an exhaustive review of the many cases interpreting § 40-4-202(1), MCA (hereinafter referred to as § 202(1)), we conclude that our jurisprudence in this area has indeed been confusing and inconsistent. Therefore, for the edification of the courts and litigants, we seek now to clarify the manner in which the statute should be applied when apportioning property in a dissolution proceeding.

¶12 Section 40-4-202, MCA, is set forth below in relevant part:

(1) In a proceeding for dissolution of a marriage . . . the court, without regard to marital misconduct, shall . . . finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both. In making apportionment, the court shall consider the duration of the marriage and prior marriage of either party; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; custodial provisions; whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution or dissipation of value of the respective estates and the contribution of a spouse as a homemaker or to the family unit. In dividing property acquired . . . by gift, bequest, devise, or descent; property acquired . . . in exchange for property acquired by gift, bequest, devise, or descent; the increased value of property acquired prior to marriage . . . the court shall consider those contributions of the other spouse to the marriage, including:
    (a) the nonmonetary contribution of a homemaker;
    (b) the extent to which such contributions have facilitated the maintenance of this property; and
    (c) whether or not the property division serves as an alternative to maintenance arrangements.

¶13 This statutory provision is part of the Uniform Marriage and Divorce Act (UMDA). The Montana Legislature adopted the UMDA (Chapter 3, Title 48, R.C.M. 1947) in 1975 and it became effective on January 1, 1976. *Rogers v. Rogers*, 169 Mont. 403, 406, 548 P.2d 141, 143 (1976); *State ex rel. Muirhead v. District Court*, 169 Mont. 535, 542, 550 P.2d 1304, 1307-08 (1976). Since its adoption, we have recognized that the first three sentences of § 202(1) (the "general purpose" section of the statute), require a district court to "equitably apportion" between the parties all property and assets belonging to either or both parties, "however and whenever acquired" and whether title is in the name of the husband or wife or both. *Marriage of Herron*, 186 Mont. 396, 608 P.2d 97 (1980). In other words, *everything* owned jointly or by either party must be equitably apportioned by the district court in a dissolution proceeding regardless of when or how it was acquired. This section of the statute also instructs courts to consider more than a dozen factors, including age, length of marriage, employability, and contributions of a homemaker to the marriage or to the family unit.

¶14 The Legislature then included in the last sentence of § 202(1) additional instructions pertaining to the distribution of pre-acquired, gifted and inherited property (for purposes of this Opinion, the "inherited property" section). The statute instructs that "the court shall consider those contributions of the other spouse to the marriage," when distributing pre-acquired, gifted or inherited property, including: (a) the nonmonetary contribution of a homemaker; (b) the extent to which such contributions have facilitated the maintenance of the disputed property; and (c) whether or not the property disposition serves as an alternative to maintenance arrangements. On the basis of this portion of the

7

statute, we have treated pre-acquired, gifted, and inherited property differently from other property acquired during the marriage, when reviewing property distributions. *See e.g. Marriage of Luisi*, 232 Mont. 243, 756 P.2d 456 (1988); *Marriage of Metcalf*,183 Mont. 266, 598 P.2d 1140 (1979).

¶15   As argued by counsel in this case, since the adoption of this statute we have applied these inheritance and gift provisions on scores of occasions, with varying and at times conflicting results.  In many of these cases it is not apparent whether the district court or this Court considered all three factors; in some cases we focus on (a) and (b) with no mention of (c); in others, the converse is true.  Additionally, in some cases we state that pre-acquired, gifted or inherited property is *included* in the marital estate,[1] while in others we expressly *exclude* such property from the marital assets for distribution purposes.[2]   After consideration of the comments and concerns voiced by counsel, a review of the legislative history, and a close reading of the language of the statute, we conclude now that whether these pre-acquired, gifted, or inherited assets are expressly "included" or "excluded" from the marital assets is not the relevant inquiry.  Rather, we must ask whether the district court adequately considered all of the relevant facts of the particular case; whether it considered the statutory factors; and then whether it equitably distributed all property and assets accordingly.

¶16   Our review of cases applying the provisions of § 202(1) reveals that over time, we have moved away from the overarching premise of the statute in an attempt to interpret

---

[1] *Marriage of Brown*, 179 Mont. 417, 587 P.2d 361 (1978); *In re Williams*, 2009 MT 282, ¶¶ 22-23, 352 Mont. 198, 217 P.3d 67; *Kelly v. Thompson*, 2009 MT 392, ¶ 35, 353 Mont. 361, 220 P.3d 627.
[2] *Marriage of Gallagher*, 248 Mont. 100, 103, 809 P.2d 579, 581 (1991); *Marriage of Howard*, 2008 MT 351, ¶ 24, 346 Mont. 312, 195 P.3d 812.

and apply those portions of the statute that specifically address the division of pre-acquired assets or property acquired by gift, bequest, devise or descent. The overarching premise of the statute is this: "In a proceeding for dissolution of marriage . . . the court . . . shall . . . finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both." Taken literally, this language means the court has the ultimate authority to distribute all property of both spouses; it is not required to subtract premarital assets or inheritances from the marital estate before dividing it, nor is it limited in its authority to determine how such assets are to be divided. To be sure, the statute does specify the particular matters to be considered in dividing pre-acquired, gifted or inherited property, but it nowhere provides that these "considerations" constitute a constraint on the district court's essential mandate, which is to equitably divide all assets of the parties, however and whenever acquired.

¶17 Part of the problem with applying § 202(1) stems from the imprecision of its structure and language. As noted above, after setting forth all the standard factors to be considered generally when apportioning the property of the spouses, the statute then launches into a different list altogether. It provides in pertinent part:

> In dividing property acquired prior to the marriage; property acquired by gift, bequest, devise, or descent; . . . the increased value of property acquired prior to marriage; . . . the court shall consider those contributions of the other spouse to the marriage, including:
> (a) the nonmonetary contribution of a homemaker;
> (b) the extent to which such contributions have facilitated the maintenance of this property; and
> (c) whether or not the property division serves as an alternative to maintenance arrangements.

9

Notably, the foregoing language has no ascertainable source. The original 1970 version of the UMDA specifically excluded pre-acquired, gifted, and inherited property from the definition of "marital estate." However, the UMDA was amended in 1973 to drop this exclusion altogether. Additionally, the amended version did not carve out pre-acquired, gifted, or inherited property for distribution purposes. However, when our Legislature adopted the UMDA in 1975, it inexplicably added the above language to the uniform statute. No other state legislature has adopted this language and, unfortunately, our legislative history on the source and intent of this language is silent. Montana courts have therefore been left to their own devices to determine how to apply this provision.

¶18 Given the confusion this statute has generated, this Court has a responsibility to provide direction for practitioners and district courts in the interpretation and application of the statute. We now undertake to move our jurisprudence in a direction that is more faithful to the language and primary intent of the statute. This endeavor will necessitate the overturning of numerous decisions; otherwise, these cases will continue to be cited for the now rejected propositions they contain. We caution that the list of overturned cases does not include every decision in which the statute was interpreted, but rather contains only those cases in which the district court's interpretation of § 202(1) led it to a decision that is inconsistent with the rule we announce here.

¶19 Section 40-4-202, MCA, obligates a court to equitably apportion between the parties all assets and property of either or both spouses, regardless of by whom and when acquired. This directive applies to all assets, including pre-acquired property and assets

10

acquired by gift, bequest, devise or descent. The party claiming ownership of the pre-acquired, bequested or gifted property is entitled to argue that it would be equitable to award him or her the entirety of such property. Accordingly, when distributing pre-acquired property or assets acquired by gift, bequest, devise or descent, the court must also consider the contributions of the other spouse to the marriage, and take account of the three factors set forth at § 40-4-202(1)(a)-(c), MCA. The court's decision with respect to this category of property must affirmatively reflect that each of these factors was considered and analyzed, and must be based on substantial evidence. However, we stress that while the factors set forth in § 40-4-202(1)(a)-(c), MCA, must be considered by the court, they are not limitations on the court's obligation and authority to equitably apportion all assets and property of either or both spouses, based upon the unique factors of each case.

¶20 Returning to the case before us, Kevin alleges numerous errors related to the District Court's monetary award to June of a portion of his inherited real property. He first asserts June should not have been awarded any of his inherited property because she did not contribute to the preservation, maintenance, or increase in value of the property. He also argues the valuation of the lakefront property upon which the District Court based its award to June was erroneous. Lastly, he submits that the court should not have awarded June a "sum certain" amount; rather, if it was going to award her anything, it should have awarded her a "proportionate share of the appreciation" of the lakefront property based upon the actual value determined at the time of sale.

11

¶21 Kevin concedes that June made contributions to the marriage by virtue of being a homemaker. He relies on *Stoneman v. Drollinger*, 2000 MT 274, ¶ 20, 302 Mont. 107, 14 P.3d 12, *rev'd in part on other grounds, Marriage of Stoneman*, 2003 MT 25, 314 Mont. 139, 64 P.3d 997), however, for the premise that "a spouse is not entitled to a share of inherited property because of contributions made by virtue of being the family homemaker." He points to June's admission in her testimony that she "made no contributions" to Kevin's inherited property and did not "help preserve it or improve it in any other way than [her] housekeeping duties," in support of his contention that she is not entitled under § 40-4-202(1)(b), MCA, to any share of this inherited property. In addition, and as a separate basis for reversal, he asserts that under Montana law June is not entitled to a portion of inherited property if the appreciation of the asset during the marriage is due only to market factors. *Marriage of Steinbeisser*, 2002 MT 309, ¶ 47, 313 Mont. 74, 60 P.3d 441.

¶22 The District Court's Decree, as required by § 40-4-202(1)(a), MCA, set forth June's nonmonetary contributions as a stay-at-home wife and mother—cooking, cleaning, washing clothes, maintaining the marital home, and other household duties as well as caring for the couple's daughter. These findings are supported by the evidence presented during the proceeding and are not clearly erroneous.

¶23 Without further explanation, however, the court then decreed:

> By virtue of June's primarily non-monetary but nevertheless substantial and valuable contributions to the marriage *as well as the preservation of the real property*, . . . she is awarded ½ the current value of the Lakefront property, of which her share would be valued at $275,000 and 1/3 of the increased value of the remaining property as of the time Kevin inherited

same, of which her share would be valued at a maximum of $69,167. Kevin is ordered to pay June $344,167 within 6 months of the Decree. (Emphasis added.)

¶24 As we stated in *Collett*, 190 Mont. at 504, 621 P.2d at 1095, and as we state here, the District Court must refer to the factors enumerated in § 202(1) in its findings and conclusions relative to inherited property. Here, the court referenced most of the factors set forth in the general purpose section of the statute in its Decree but when it came to apportionment based on § 40-4-202(1)(a)-(c), MCA, the court was less precise. It does not indicate what contributions June made to "the preservation of the real property," nor does it indicate whether the award is made in whole or in part in lieu of maintenance. In the Decree, the court awarded June temporary maintenance of "not less than $500 per month retroactive to March 1, 2009 for a period of up to 5 years or until the proceeds of the sale of the marital property and marital IRA have been paid in full." It would appear from this interim maintenance award that the court's property division served as an alternative to maintenance arrangements; however, the court's intention is unclear and the Decree makes no reference to the maintenance provisions of § 40-4-203, MCA. We therefore remand this matter to the District Court for further evaluation of this issue in accordance with this Opinion. Moreover, we have held in a number of cases that to have a proper distribution of marital assets, the district court must first determine the net worth of the parties at the time of their divorce. *Vivian v. Vivian*, 178 Mont. 341, 344, 583 P.2d 1072, 1074 (1978); *Herring v. Herring*, 184 Mont. 353, 355, 602 P.2d 1006, 1007 (1979). Otherwise stated, the trial court must determine and consider the assets and liabilities of each of the parties. Section 40-4-202, MCA.

¶25 *Stoneman* and *Steinbeisser,* upon which Kevin relies, cite *Marriage of Smith*, 264 Mont. 306, 312, 871 P.2d 884, 885 (1994), in which we stated for the first time: "The court cannot distribute to the non-acquiring spouse property acquired prior to the marriage or acquired by gift, bequest, devise, or descent when there is no evidence that the spouse made any contribution to those assets in any form." This unconditional statement was a departure from the dominant purpose of the statute, as it elevates the "considerations" set forth in § 40-4-202(1)(a), (b), MCA, to the level of restrictions on a district court's discretion to award gifted or inherited property in an equitable manner. Such a categorical limitation does not serve the overarching premise of the statute; therefore, we overrule *Smith*, *Stoneman*, *Steinbeisser,* and their progeny[3] to the extent these cases are incompatible with our rulings set forth in this Opinion.

¶26 Kevin further argues that under § 40-4-202(1)(b), MCA, and our case law interpreting this statute, if it awards to June any portion of the value of his inherited property at all, the District Court may award her only a portion of the property value which reflects its appreciation during the parties' marriage, and it cannot award her a

---

[3] *Marriage of Dirnberger*, 2007 MT 84, 337 Mont. 56, 154 P.3d 1227; *Marriage of Dahm*, 2006 MT 230, 333 Mont. 453, 143 P.3d 432; *Marriage of Markegard*, 2006 MT 111, 332 Mont. 187, 136 P.3d 532; *Marriage of Harris*, 2006 MT 63, 331 Mont. 368, 132 P.3d 502; *Marriage of Grende,* 2004 MT 36, 320 Mont. 38, 85 P.3d 788; *Marriage of Herrera*, 2004 MT 40, 320 Mont. 71, 85 P.3d 781; *Marriage of Banka*, 2003 MT 84, 315 Mont. 97, 67 P.3d 885; *Marriage of Rolf*, 2000 MT 361, 303 Mont. 349, 16 P.3d 345; *Siefke v. Siefke*, 2000 MT 281, 302 Mont. 167, 13 P.3d 937; *Marriage of Engen*, 1998 MT 153, 289 Mont. 299, 961 P.2d 738; *Marriage of Hogstad*, 275 Mont. 489, 914 P.2d 584 (1996); *Marriage of Smith*, 270 Mont. 263, 891 P.2d 522 (1995); *Marriage of Bradshaw*, 270 Mont. 222, 891 P.2d 506 (1995); *Marriage of Gallagher*, 248 Mont. 100, 809 P.2d 579 (1991); *Marriage of Eklund*, 236 Mont. 77, 768 P.2d 340 (1989); *Marriage of Stewart,* 232 Mont. 40, 757 P.2d 765 (1988); *Marriage of Wessel,* 220 Mont. 326, 715 P.2d 45 (1986); *Marriage of Becker,* 218 Mont. 229, 707 P.2d 526 (1985); *Marriage of Merry,* 213 Mont. 141, 689 P.2d 1250 (1984); *Marriage of Glasser,* 206 Mont. 77, 669 P.2d 685 (1983); *Marriage of Balsam,* 180 Mont. 129, 589 P.2d 652 (1979); *Marriage of Jorgensen*, 180 Mont. 294, 590 P.2d 606 (1979).

portion of the property's total value. He relies upon *Marriage of Herrera*, 2004 MT 40, 320 Mont. 71, 85 P.3d 781, for this proposition. *Herrera* was overturned above. Its holding that the non-acquiring spouse is "entitled only to an equitable share of the appreciated or preserved value of [husband's] pre-acquired and gifted contributions which is attributable to her efforts" contravenes our revised interpretation of § 40-4-202, MCA, as announced in this Opinion.[4] *Herrera*, ¶ 23.

¶27 Kevin also strongly disagrees with the $550,000 value the court assigned to the lakefront property. He submits the court made a manifest error when it relied upon a comparative market analysis (CMA) performed by realtor Carroll Kenney who testified on behalf of June and valued the lakefront property at $550,000. Following the entry of the court's Decree, Kevin filed a Motion to Amend the Decree, attaching to his motion a different CMA prepared by realtor Denise Robinson in March 2010 that purported to value the lakefront property at $800-$900 per front foot, or $80,000-$90,000. He urged the court, in reliance on the Robinson CMA and based upon his post-trial difficulty in selling the lakefront property, to amend that part of the Decree relating to the lakefront property valuation. The District Court denied his motion.

¶28 On appeal, Kevin again argues that the court erred in its valuation of the lakefront property, citing the Robinson CMA. However, Robinson was not called to testify and her CMA was not offered into evidence at trial by either Kevin or June. In fact, Kevin offered no evidence at trial whatsoever as to the lakefront property value. The only

---

[4] Many cases overruled in Footnote 3 above also stand for the now-incorrect proposition that a district court must limit non-acquiring spouse awards to appreciation value.

evidence of the property value before the court was the Kenney CMA. Kenney testified from her report at trial and was cross-examined by Kevin's counsel. We have repeatedly stated that "[t]he District Court has broad discretion in determining the value of property in a dissolution proceeding and is free to adopt any reasonable valuation of marital property which is supported by the record. As long as the valuation is reasonable in light of the evidence submitted, we will not disturb the finding on appeal." *In re Alexander*, 2011 MT 1, ¶ 16, 359 Mont. 89, 246 P.3d 712. We conclude that substantial evidence supported the court's adoption of the Kenney valuation, especially in light of the fact that it was the only valuation offered at trial. We therefore decline to disturb this valuation on appeal.

¶29 Kevin also argues that the District Court erred when it awarded June a $275,000 "set sum" for her share of the lakefront property rather than a percentage of the appreciation based upon the "actual sale proceeds." Kevin urges us to reverse the court's set sum award and property valuation and conclude that the only certain way to determine the value of the property is by selling it. Upon such a sale, Kevin offers that he could then distribute a percentage amount of the sale proceeds to June, as directed by the court. He complains that because the District Court instructed him to pay June $275,000, should the lakefront property sell for less than the court's assigned value, he would "clearly suffer the financial hardship of such a shortage." In fact, he maintains that should the property sell for less than $275,000, June could conceivably be awarded 100% of the property and he would still owe her money.

¶30 As noted above, on remand the District Court is to assess the factors set forth in § 202(1) in determining the legal basis for an award to June of a portion of the value of the lakefront property. However, the manner in which the court requires the award to June to be paid—set sum or percentage—is a determination which we will not disturb absent an abuse of discretion. *Marriage of Thorner*, 2008 MT 270, ¶ 21, 345 Mont. 194, 190 P.3d 1063. The court may require that the award be paid in the manner it deems most appropriate.

¶31 Lastly, Kevin argues that the court erred when it awarded June the 2005 Toyota Sienna because the automobile had been purchased with inherited funds and as such should have been awarded to him. June counters that Kevin did not "submit any evidence as to the amounts he received from [his father's] various trust accounts"; therefore he could not trace the funds used to purchase the Toyota Sienna back to his inherited cash. Without tracing the purchase funds to his inheritance, June claims, Kevin did not meet his burden of proof under § 26-1-402, MCA. Additionally, June maintains the District Court considered the specific facts associated with the purchase, ownership, use and sale of the vehicle and correctly exercised its discretion by equitably awarding her the car.

¶32 As explained above, inherited property, or property acquired with inherited funds, must be equitably allocated in a dissolution based upon consideration of all factors set forth in § 202(1), including subsections (a)-(c). Had Kevin presented adequate evidence tracing the acquisition of the 2005 Toyota Sienna to his inherited funds, the District Court had the discretion to award the vehicle to Kevin if such award was equitable under the

17

facts of this case. However, Kevin failed to present any such evidence. Therefore, after specifically noting the car had been purchased during the marriage with the title being put in both Kevin and June's names, that it was June's only source of transportation for herself and their daughter, and that June was not in a financial position to purchase another vehicle, the court awarded it as jointly owned marital property to June. This was not an abuse of the court's discretion.

¶33 June requests an award of attorney fees on appeal. We decline to enter such an award, as the result we reach is premised in significant part upon the arguments of both parties. We also caution the District Court on remand that § 40-4-202, MCA, is to be applied "without regard to marital misconduct."

## CONCLUSION

¶34 Under § 40-4-202, MCA, the District Court is tasked with the overarching obligation to equitably apportion all property belonging to either or both parties however and whenever acquired, without regard to title, and without regard to marital misconduct. In equitably apportioning property that is pre-acquired, gifted or inherited, the court must additionally consider the contributions of the other spouse to the marriage including the nonmonetary contribution of a homemaker; the extent to which such contributions have facilitated the maintenance of this property; and whether or not the property division serves as an alternative to maintenance. The court's decision must reflect that each of these factors was considered, but these considerations are not limitations on the court's obligation to equitably apportion all of the property, based upon the unique factors of each case. It will be incumbent upon the parties to provide full disclosure of all property.

18

It will be incumbent upon the court to consider the assets and liabilities of each of the parties and to enter property-specific findings of fact underlying the apportionment, which findings are grounded in the language of § 40-4-202, MCA, and based upon substantial evidence. Prior cases which vary from these rules are overruled to that extent.

¶35 For the foregoing reasons, we affirm the District Court's award of the 2005 Toyota Sienna to June and its valuation of Kevin's lakefront property. We remand this matter to the District Court for further findings consistent with this Opinion.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ BRIAN MORRIS
/S/ JIM RICE