DA 11-0489

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 91

ANNE NANG LOI,

      Petitioner and Appellant,

  v.

TODD C. FEELEY,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DR 09-11C
Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        Suzanne C. Marshall; Marshall Law Firm, Bozeman, Montana

      For Appellee:

        R. Stan Peeler; Peeler Law Office, Bozeman, Montana

Submitted on Briefs:  March 28, 2012

Decided:  April 24, 2012

Filed:

_____
                       Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Todd Feeley (Todd) and Anne Nang Loi (Anne) were married in 1993. Prior to their marriage, Anne inherited or was gifted an amount between $200,000 and $240,000 from the sale of her family's frozen shrimp business in France. Anne filed for dissolution of the parties' marriage in January 2009. At trial, Anne alleged that approximately $180,000 of the parties' $198,000 down payment on the marital home came from her inherited funds. The District Court found that there was no evidence other than the testimony of Anne and her mother to establish that $180,000 of the inherited money had been applied to the down payment. Instead, the court found that Anne was entitled to an additional $79,982.50 in equity from the marital home because this amount could be traced to the down payment. Anne appeals.

¶2     We rephrase the issue for review:

¶3     *Whether the District Court erred in its application of the law in determining the distribution of the marital property, including any property inherited by Anne prior to marriage.*

FACTUAL AND PROCEDURAL BACKGROUND

¶4     Anne and Todd were married on July 31, 1993, in San Jose, California. Todd had just completed his doctoral studies at the time of the marriage. The couple moved to Switzerland the same year and resided there for the next three years. In 1996, they returned to the United States so that Todd could begin work as an assistant research professor at Montana State University (MSU).

2

¶5     Anne's father had passed away in 1984, and her mother continued to run the family's frozen shrimp business until 1989. That year, she sold the business and divided the profits equally among her six children. A bank account with the United Bank of Switzerland (UBS account) was established in Anne's name, containing between $200,000 and $240,000.

¶6     The couple had two children, who at the time of trial were 15 and 11 years old. In 1998, they bought a house on Hitching Post Road in Bozeman for $277,000, making a $198,000 down payment. At the time of trial, the agreed upon value of the home was $385,000. Todd is now an associate professor at MSU, and Anne works there as a systems administrator.

¶7     On January 12, 2009, Anne was arrested for partner-family member assault and a temporary order of protection was issued against her upon Todd's petition. Anne filed a petition for dissolution the next day. In the time between the filing of the petition for dissolution and trial, the parties were mired in numerous disputes regarding visitation with the children and various expenditures and debts accrued by Anne after separation.

¶8     Hearings on the petition for dissolution were held over four days in August 2010. Anne contended that she had applied $180,000 of her inherited funds to the parties' down payment on the marital residence. The down payment had been dispersed from the parties' joint bank account at First Interstate Bank. She and her mother, Tu, testified that Tu had transferred $180,000 out of Anne's UBS account into a separate account when the couple decided to purchase a home. Todd testified that these funds had been disbursed from the comingled marital amount, but said there was no way to determine the sources

3

of the funds in the account. Both parties agreed that these accounts did indeed contain inherited funds that had been comingled with marital earnings. However, the only record of such a transaction was that of a May 12, 1998, transfer of $79,982.50 from the UBS account to the First Interstate Bank account.

¶9 The District Court entered its order on April 25, 2011, dissolving the parties' marriage, distributing the marital estate, and establishing a final parenting plan and support order for the children. In calculating the amount of the equalization payment to be made by Todd, who was to keep the marital home, the District Court found that Anne was only entitled to an additional $79,982.50 equity credit in the value of the marital home because that was the amount traceable to her inherited property.

¶10 Anne promptly filed a motion to alter or amend the judgment of the District Court, contending that it had failed to award her an additional $140,000 worth of inherited property. The District Court denied this motion, finding that Anne had failed to prove at trial that the entire down payment had been made with her inherited funds, and that she had also failed to show that she had spent an additional $40,000 of this money on a marital vehicle. Anne now appeals from the orders of the District Court.

STANDARDS OF REVIEW

¶11 We review a district court's division of marital property to determine whether the court's findings of fact are clearly erroneous and the conclusions of law are correct. *In re Marriage of Funk*, 2012 MT 14, ¶ 6, 363 Mont. 352, 270 P.3d 39. Absent clearly erroneous findings, we will affirm a district court's division of property unless we identify an abuse of discretion. *Funk*, ¶ 14. The court's decision with respect to pre-

4

acquired property and assets acquired by gift, bequest, devise or descent must be based on substantial evidence. *Funk*, ¶ 19.

## DISCUSSION

¶12 *Whether the District Court erred in its application of the law in determining the distribution of the marital property, including any property inherited by Anne prior to marriage.*

¶13 Anne argues that the District Court erred when it failed to award her an additional $100,000 when distributing the marital estate because it did not recognize that her inheritance was the source of $180,000 of the down payment made on the marital home. Todd argues that Anne can only trace $79,982.50 of her inheritance to the down payment, and that the only evidence of greater contributions consists of self-serving testimony that is contradicted by other evidence in the case. Citing *In re Marriage of Steinbeisser*, the District Court found that where the contribution of an inheritance is not traceable and both parties contributed to any increased value of a marital asset, it is inequitable to award the value of the asset solely to the acquiring spouse upon dissolution. 2002 MT 309, ¶ 37, 313 Mont. 74, 60 P.3d 441, *overruled in part*, *Funk*, ¶ 25. Accordingly, the court credited Anne with contributing $79,982.50 of her separate, inherited property toward the down payment on the marital home because this amount was traceable to her.

¶14 Section 40-4-202, MCA, vests the district court with broad discretion to apportion the marital estate in a manner equitable to each party under the circumstances, providing in relevant part:

5

(1) In a proceeding for dissolution of a marriage . . . the court, without regard to marital misconduct, shall . . . finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both. In making apportionment, the court shall consider the duration of the marriage and prior marriage of either party; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; custodial provisions; whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution or dissipation of value of the respective estates and the contribution of a spouse as a homemaker or to the family unit. In dividing property acquired prior to the marriage; property acquired by gift, bequest, devise, or descent; property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent; the increased value of property acquired prior to marriage; and property acquired by a spouse after a decree of legal separation, the court shall consider those contributions of the other spouse to the marriage, including:

(a) the nonmonetary contribution of a homemaker;

(b) the extent to which such contributions have facilitated the maintenance of this property; and

(c) whether or not the property division serves as an alternative to maintenance arrangements.

¶15 Anne cites to *Stoneman v. Drollinger* in arguing that pursuant to § 40-4-202, MCA, Todd is only entitled to an equitable share of the appreciated or preserved value of the property acquired by gift, bequest, devise, or descent which is attributable to his efforts. 2000 MT 274, ¶ 18, 302 Mont. 107, 14 P.3d 12, *overruled in part*, *Funk*, ¶ 25. She alleges that Todd's salaries between 1996 and 1998 could not have possibly allowed the couple to make a $198,000 down payment on the marital home if she hadn't contributed much more than what was credited to her by the District Court. In *Funk*, however, we overturned our holdings in *Stoneman* and multiple other cases regarding

6

property acquired prior to the marriage or acquired by gift, bequest, devise, or descent. These overruled cases stood for the proposition that the non-acquiring spouse was limited to an equitable share of the appreciated value of such property attributable to that spouse's efforts. *See Funk*, ¶ 25 at n. 3.

¶16     Neither party cites to *Funk*; however, our opinion in that case controls the disposition in this appeal. In that case we determined that the overarching premise of § 40-4-202, MCA, is to "finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both." *Funk*, ¶ 16. Thus, instead of focusing our inquiry on those portions of the statute that specifically address the division of pre-acquired assets or property acquired by gift, bequest, devise or descent, the appropriate analysis is "whether the district court adequately considered all of the relevant facts of the particular case; whether it considered the statutory factors; and then whether it equitably distributed all property and assets accordingly." *Funk*, ¶ 15.

¶17     The record in this case establishes that the District Court considered both parties' conflicting testimony as to the sources of the down payment on the marital home. The court found that Anne could only conclusively trace $79,982.50 of her inherited property to the down payment, and it awarded her this much. As noted above, all decisions made with respect to this category of property must be based on substantial evidence. *Funk*, ¶ 19. We find no indication in the record that the District Court misperceived the weight of the evidence in this case.

7

¶18 The District Court also considered the over 15-year length of the parties' marriage, the ages and health of the parties, their education and employment, and the contributions each party made to the marital assets as required by § 40-4-202(1), MCA. We have stated that in findings and conclusions relative to inherited property, a court must also refer to the factors in § 40-4-202(1)(a)-(c), MCA. *Funk*, ¶ 24 (citing *In re Marriage of Collett*, 190 Mont. 500, 504, 621 P.2d 1093, 1095 (1981)). However, Todd conceded that the $79,982.50 was due to Anne. The court determined that aside from the aforementioned credit, the relevant facts and statutory considerations called for an equal division of the marital estate.

¶19 Despite relying in part upon case law that has subsequently been overturned, the District Court weighed and properly considered the relevant facts and statutory factors, and arrived at an equitable division of the parties' property and assets.

## CONCLUSION

¶20 Anne has failed to show the District Court's equitable distribution of the marital estate lacked credible support in the evidence or otherwise constituted an abuse of discretion. The judgment of the District Court is affirmed.

/S/ MIKE McGRATH

We concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JAMES C. NELSON