FILED

03/05/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0165

DA 23-0165

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 46N

IN RE THE MARRIAGE OF:

CHELSEA RENAE WILSON,

Petitioner and Appellee,

and

MARK ALAN WILSON,

Respondent and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DR 21-409
Honorable Donald L. Harris, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Daniel Ball, Hendrickson Law Firm, P.C., Billings, Montana

For Appellee:

Katherine Delaney Berst, Berst Law Firm, PLLC, Billings, Montana

Submitted on Briefs: January 24, 2024

Decided: March 5, 2024

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      The Thirteenth Judicial District Court, Yellowstone County, entered a final dissolution decree in the marriage of Mark and Chelsea Wilson.  Mark appeals, arguing the District Court abused its discretion in dividing the marital estate.

¶3      We affirm.

¶4      Mark and Chelsea began dating in 2013 and moved into their Billings-area home in February or March 2014, shortly after Chelsea became pregnant with their first child.  The couple married on November 10, 2016, and had a second child in May 2017.

¶5      Mark financially supported Chelsea and their children with his employment in the oil industry.  Mark worked hitches lasting several weeks, and sometimes months, which kept him away from home for roughly nine months of the year.  Mark's annual income was between $211,680 and $252,000 before taxes.

¶6      Chelsea did not work between the fall of 2013 and January 2022 because she and Mark agreed that she would stay home to care for their children.  Chelsea thus provided childcare and was responsible for the maintenance and upkeep of their home.  In January

2022, following her separation from Mark, Chelsea resumed part-time work as a behavioral specialist, where she would earn $23,712 a year before taxes working 30 hours per week.

¶7     Chelsea filed a dissolution petition (Petition) on May 12, 2021.  Trial hearings were held on April 4 and May 23, 2022.[1]  The District Court entered its Findings of Fact, Conclusions of Law, and Final Decree of Marital Dissolution (Decree) on August 26, 2022.

¶8     Among other assets, the District Court's distribution included the full market value of the family home: $365,000; Chelsea's valuation for the 2012 Dodge Ram truck: $28,000; and Mark's attorney costs and fees: $39,761.57.[2]  The Decree awarded Mark possession of the family home, its debt, and the 2012 Dodge Ram.  Chelsea received the family's 2019 Dodge Grand Caravan.  To offset the value of the assets that he was awarded, the District Court ordered Mark to make an equalization payment of $81,750.84 to Chelsea.

¶9     On September 14, 2022, Mark filed a Rule 59 motion to amend judgment, objecting to the inclusion of attorney costs and fees in the distribution.  Mark subsequently appealed other matters in the Decree on December 7, 2022.  Chelsea requested a hearing regarding costs and fees on January 6, 2023.  After the hearing, on February 27, 2023, the District Court ruled that it was "reasonable to award Chelsea attorney's fees and costs in the amount of $19,880.78 . . . constitut[ing] half of the $39,761.57 Mark spent on his attorney's fees

---

[1] The record does not contain a transcript of the May 23, 2022 trial.  An affidavit of unavailability dated March 16, 2023, indicates the court reporter was absent from that hearing and a transcript therefore does not exist.  The record that is otherwise available, however, establishes a satisfactory foundation for this Opinion.

[2] A full list of the distributed assets was provided in the Appendix to Appellant's Brief.

and costs from marital funds . . . ." The District Court thus ordered Mark to pay Chelsea $19,880.78 in addition to the equalization payment of $81,750.84.

¶10    On appeal, Mark argues the District Court erred in determining his income level. Mark also asserts the District Court erred in accepting Chelsea's valuation for the 2012 Dodge Ram truck and the full market value of the family's Billings-area home. Finally, Mark avers that it was improper for the District Court to include attorney costs and fees in the distribution.

¶11    Absent clearly erroneous factual findings, we review a district court's division of property for an abuse of discretion. *In re Funk*, 2012 MT 14, ¶ 6, 363 Mont. 352, 270 P.3d 39 (citation omitted). District courts have broad discretion in dividing marital estates; their essential mandate is to ensure an equitable distribution of assets and liabilities, "however and whenever acquired." Section 40-4-202(1), MCA; *see Funk*, ¶ 16. In a distribution of assets, a district court must consider the contributions of a spouse to the marriage, including the "nonmonetary contribution of a homemaker." Section 40-4-202(1)(a), MCA.

¶12    At the outset, it bears emphasizing that the District Court was in a better position than this Court is now to weigh the credibility of evidence and conflicting testimony. *In re Marriage of Paschen*, 2015 MT 350, ¶ 42, 382 Mont. 34, 363 P.3d 444 (citation omitted). That principle is significant here because Mark's appeal focuses primarily on factual disagreements that, in our view, the District Court resolved on sound footing.

¶13    In declining to award Mark for premarital interest in the family home, for example, the District Court explained:

4

Though the parties did not marry until November 2016, the parties had been living together and Chelsea was pregnant with their child when they moved into their home in 2014. The Court finds that Chelsea's premarital nonmonetary contributions to the care and maintenance of the family home before their November 2016 marriage were continuous and substantial.

Mark does not articulate a cogent argument for his position to the contrary. Rather, he simply instructs us that *Funk* does not "direct" the District Court to include premarital interest in an equitable distribution. The mere fact that the District Court determined it was more equitable to include the full value of the home does not render its decision an abuse of discretion. The District Court considered the circumstances surrounding the beginning of the couple's relationship—including Chelsea's pregnancies and her nonmonetary contributions—and it determined each party's future earning potential weighed in favor of including the full market value of the home in the distribution, regardless of when the marriage began.

¶14 The District Court's findings regarding the 2012 Dodge Ram truck and Mark's income level were similarly well-supported. The record shows that Mark is a skilled mechanic and made several expensive investments in his 2012 Dodge Ram truck, including modifications to the truck body to accommodate 37-inch tires, a leveling kit, and a chip to improve engine performance. The District Court weighed the evidence supporting each party's valuation and reasonably determined Chelsea's was "more credible than Mark's." Further, regarding Mark's income, the evidence indicates Mark typically earns between $211,680.00 and $252,000.00 per year before taxes. The fact that Mark earned significantly less in one year does not indicate an overall pattern, as Mark contends, much less a basis for reversal.

5

¶15 Finally, we are not persuaded that the District Court abused its discretion by awarding Chelsea costs and fees because she did not plead them or otherwise incorporate them in her final declaration of disclosure. Section 40-4-110(1), MCA, provides that "The court . . . may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding . . . including sums for legal and professional services rendered and costs incurred . . . *after entry of judgment*." (Emphasis added.) Mark was charged $39,761.57 by his attorney, and he paid her from his monthly income and proceeds from the sale of a marital asset. The District Court determined that it was equitable to distribute half of Mark's costs and fees to Chelsea because Mark had removed their value from the marital estate. The statute clearly provides the District Court discretion to award costs and fees as necessary for the equitable distribution of marital assets, and the statute nowhere incorporates a threshold pleading requirement for doing so.

¶16 As discussed, the District Court has broad latitude in dividing a marital estate. *See Funk*, ¶ 16. The record before us does not indicate that the District Court committed clear error or abused its discretion in awarding Chelsea a disproportionate share. Mark's future earning potential is considerably greater than Chelsea's, and Chelsea made substantial contributions to their family and assets over the course of their relationship. The District Court was in a better position to assess the credibility of each party's evidence, and we are not left with a definite and firm conviction that a mistake was made. *Paschen*, ¶¶ 17, 42.

¶17 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the

6

Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶18    Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR